# EXHIBIT A

STATE OF RHODE ISLAND                    SUPERIOR COURT
PROVIDENCE SC

HENRY SALAZAR

     VS.                         Civil Action No.

SELENE FINANCE, LP,
U.S. BANK NATIONAL ASSOCIATION AS
LEGAL TITLE TRUSTEE FOR
BCAT 2016-18TT, and
PEDRO TAVERAS

## COMPLAINT

1.    Plaintiff, Henry Salazar is a resident of Providence, Rhode Island, residing at 84 Merino Street, Providence, Rhode Island.

2.    Plaintiff is the owner of the real property located at 84 Merino Street, Providence, Rhode Island.

3.    Through this action Plaintiffs challenge the lawfulness of the foreclosure sale of the residence of Henry Salazar, which was conducted on July 20, 2017, by certain Defendants: U.S. Bank National Association as Legal Title Trustee for BCAT 2016-18TT ("US Banbk") and Selene Finance, LP. a loan servicer ("Selene") acting as an agent of US Bank and its attorney, Korde Law Offices, PC("Korde")

4.    Pedro Taveras claims to be the current owner of the Plaintiff's property.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action and all defendants pursuant to R.I.G.L§34-27-3.2.

6.    This Court also has jurisdiction over this case pursuant to the Real Estate Settlement and Procedures Act, 12 U.S.C. §2605.

7.    This Court also has jurisdiction over this case pursuant to the Fair Debt

Collection Practices 15 U.S.C. §1692.     This Court also has jurisdiction over this case pursuant to the Truth in Lending Act 15 U.S.C. §1640.

8.     The principal events giving rise to the claims stated herein occurred in the State of Rhode Island.

9.     This Court has authority to issue declaratory and injunctive relief pursuant to RCP 57 and R.IG.L 9-30-1 et seq.

10.     The Plaintiff Henry Salazar is a citizen of the United States who resides at 84 Merino Street, Providence, RI 02909 ("Property").

11.     Selene Finance, LP ("Selene") is a loan servicer, with a principal place of business in Houston, Texas.

12.     U.S. Bank, National Association ("US Bank") is a national bank with a principal place of business in Minnesota.

13.     Pedro Taveras is a resident of the City of Providence.

## GENERAL FACTUAL ALLEGATIONS

13.     On or about May 29, 2007, Henry Salazar borrowed $285,000.00 from Bank of America, N.A. ("Originating Lender"), which was evidenced by a promissory note (the "Note") on the same date. On or about the same date, the Note was secured by a mortgage ("Mortgage") in favor of the Originating Lender. The Mortgage was recorded on, in the land records of the City of Providence at Book 8968 at Page 4.A copy is attached as Exhibit A.

14.     On October 25, 2016, Bank of America, N.A., purported to assign its interest in the Mortgage to U.S. Bank National Association as Title Trustee for BCAT2016-18TT by an assignment recorded December 12, 2016in Book 11585 Page 171   in the land records for the City of Providence. A copy is attached as Exhibit B.

15.     Bank of America transferred its interest in the Mortgage to the entity which created the Trust known as BCAT2016-18TT by an assignment which is not recorded on or about September 28, 2016.

2

16.     On or about April 14, 2017, Selene had referred the Plaintiff's Mortgage account to Korde & Associates, PC to exercise the statutory power of sale and foreclose on the Plaintiff's home.

17.     On April 15, 2017 on behalf of the Defendants, Korde deposited into the United States mail a purported Default to the Plaintiff. A copy is attached as Exhibit C.

18.     Subsequently on or about May 26, 2017, Korde on behalf of Selene and US Bank sent a notice of foreclosure sale ("Notice") to the Plaintiff. The Notice is attached as Exhibit D. In the Notice, Korde stated its intention to sell the property described in the Mortgage, on July 20, 2017 at 1:00 PM.

19.     After the assignment of mortgage to US Bank and prior to receiving the Notice, Plaintiff did not receive any correspondence from Selene or US Bank or any entity acting on its behalf advising him of a Mediation Conference as described in Rhode Island General Laws § 34-27-3.2.

20. Plaintiff never received a Notice of Mediation from Rhode Island Housing or any other agency regarding mediation for this mortgagee, US Bank.

21.     On or about July 20, 2017, US Bank conducted a purported foreclosure sale of the Property, in which US Bank purportedly made a bid in the amount of $128,000.00.

22.     On August 8, 2017,US Bank, by Selene as Attorney in Fact, signed a document (hereinafter referred to as "the Foreclosure Deed" without prejudice as to its legal effect), which was recorded on August 22, 2017 in the land records for the City of Providence at Book 11807 at Page 130. The purported Foreclosure Deed is attached as Exhibit E.

24.     US Bank granted Selene a power of attorney, by which it authorized Selene to conduct foreclosure sales and to sign foreclosure deeds and eviction letters and to commence eviction proceedings.

25.     US Bank thus delegated all tasks relating to the purportedly foreclosed premises to Selene, which had hired Korde to carry out its debt collection activity on behalf of US Bank, including eviction of the residents of the premises and obtaining damages for use and occupancy from the Plaintiff and his tenants.

26.     On or about December 28, 2017, Selene authorized hired Korde to send a Notice of Termination of Tenancy to Plaintiff demanding that Plaintiff leave his home on February 1, 2018. A copy is attached as Exhibit F.

27.     In this Notice of Termination, Selene, through its attorney Korde, asserted that the Plaintiff lived in Unit 1 of the property, which was the first floor.

28.     Selene knew that the Plaintiff lived on the first floor and rented the second floor.

29.     On or about December 28, 2017, Selene authorized hired Korde to send a Notice of Termination of Tenancy to Plaintiff demanding that Plaintiff leave his home on February 1, 2018. A copy is attached as Exhibit G.

30.     In this Notice of Termination, Selene, through its attorney Korde, asserted that the Plaintiff lived in Unit 2 of the property, which was the second floor.

31.     Subsequently on March 6, 2018, Selene authorized Korde to file a Complaint for Eviction against Plaintiff in  Sixth Division District Court, Providence County, Rhode Island in case number 6CA-2018-02934 to evict him from his first floor premises and to evict his tenants from the second floor. A copy of this complaint is attached as Exhibit H.

32.     Subsequently on March 6, 2018, Selene authorized Korde to file a Complaint for Eviction against Plaintiff in  Sixth Division District Court, Providence County, Rhode Island in case number 6CA-2018-02952 to evict him from his first floor premises and to evict his tenants from the second floor. A copy of this complaint is attached as Exhibit I.

33.     On November 21, 2017, Plaintiff, through his attorney, mailed a Notice of Error pursuant to the provisions of Regulation X and the Real Estate Settlement and Procedures Act ("RESPA") to Selene, asserting the following error:

The consumer believes that you have committed an error by seeking to exercise the statutory power of sale without having sent the consumer a Notice of Mediation. This mortgage loan was purportedly assigned from Bank of America to US Bank National Association as legal title trustee for BCAT2016-18TT by an assignment dated October 25, 2016, attached to this Notice of Error. On May 27, 2017, your default service provider, The Logs Group, through its attorney, Korde & Associates mailed the consumer a Notice of Sale.  However you did not comply

4

with R.I.G.L. 34-27-3.2 since neither you nor US Bank National Association as legal title trustee for BCAT2016-18TT sent the consumer a Notice of Mediation as required by this statute. The Mediation Statute requires that before an owner of the mortgage loan sends a Notice of Sale, it must first send the consumer a Notice of Mediation. This statute states in section (d)

(d) The mortgagee shall, prior to initiation of foreclosure of real estate pursuant to § 34-27-4(b), provide to the mortgagor written notice at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices, that the mortgagee may not foreclose on the mortgaged property without first participating in a mediation conference. Notice addressed and delivered as provided in this section shall be effective with respect to the mortgagor and any heir or devisee of the mortgagor.

In the definition section mortgagee is defined as:

(8) "Mortgagee" means the holder of a mortgage, or its agent or employee, including a mortgage servicer acting on behalf of a mortgagee.

The purported mediation notice provided in the foreclosure referenced a Notice of Mediation sent by a previous mortgagee, Bank of America. However the mediation statute requires that before a mortgagee send a Notice of Sale, that the mortgagee sending the notice must provide the consumer the Mediation Notice.

Thus all foreclosure costs and expenses incurred to the mortgage loan account must be removed from the mortgage loan account and the foreclosure deed must be rescinded without any costs to the consumer's mortgage loan account.

34.    Selene received this Notice of Error on November 24, 2018.

35.    On November 21, 2017, Plaintiff, through his attorney, mailed a Notice of Error pursuant to the provisions of Regulation X and the Real Estate Settlement and Procedures Act ("RESPA") to Selene, asserting the following error:

The consumer in this case believes that you committed an error by sending a RIGL 34-27-4 notice and scheduling and advertising a foreclosure by statutory power of sale, when the consumer had not been sent a default notice pursuant to the terms of the mortgage and an acceleration notice pursuant to the terms of the mortgage. As indicated by the attached record of the United States Postal Service, the purported default letter dated April 14, 2017 was not placed in the United States mail until April 15, 2017 at 12:42 AM by a vendor in the Boston,

Massachusetts Distribution center. Thus the consumer was not provided 30 days from the date the letter was deposited into the US mail to cure the default.

In addition this letter was defective because it did not accurately state the amount of the default, which included legal fees and property inspection fees and other inappropriate charges to the mortgage loan account.

This letter was also defective that it did not designate a specific date, but stated that the default had to be cured by May 14, 2016. The term by means on or before, which is not a specific date as required by the terms of the mortgage.

You also committed error by indicating that the consumer had to contact Korde & Associates to obtain the actual amount past due.

Such notices are condition precedents to the exercise of the statutory power of sale. As a result, all charges for this illegal foreclosure should be removed from the consumer's mortgage loan account.

36.    Selene received this Notice of Error, attached as Exhibit J on November 24, 2018.

37.    Selene was aware of the invalidity of the foreclosure on November 24, 2018 due to the defective default notice and due to the failure of the mortgagee seeking to exercise the statutory power of sale sending the Plaintiff a Notice of Mediation as required by law.

38.    Instead Selene disputed the Notice of Error and decided to commence evictions of two units of the Plaintiff's property.

39.    Subsequently, Selene recognized the problem with the foreclosure due to the lack of a valid default letter and the failure of Selene on behalf of the new mortgagee to provide the Plaintiff mediation as required by R.I.G.L 34-27-3.2.

40.    It had already filed two cases for eviction against the Plaintiff and his tenants.

41.    However it merely wanted to obtain more funds from a third party who would not be aware of the defective nature of the foreclosure.

42.    Selene, in January 2018, then filed with the Internal Revenue an Internal Revenue Service Form 1099-C cancellation of Debt in the amount of $148,147.56 and also sent this to the Plaintiff's attorney. A copy is attached as Exhibit K.

43.     Selene made a determination that the best resolution of this problem was to sell the property to a third party cheaply and as quickly as possible.  It dismissed both eviction actions.

44.     Selene then listed the property for sale on Auctions.com, a website which offers properties for sale to buyers online.

45.     Selene solicited a bid from a person named Pedro Taveras, who offered $186,600.00 to purchase the property. It accepted this bid and made the decision to sell the property.

46.     In the 1099C filed with the Internal Revenue Service, Selene had listed the fair market value of the property as $155,000.00.

47.     Selene had executed a foreclosure deed conveying the property to US Bank for $128,000.00.

48.     When Selene conveyed the property on US Bank, it conveyed the property by a Special Warranty Deed, K-1.

49.     A Special Warranty Deed from Selene on behalf of US Bank was executed on April 26, 2018.

50.     This deed only conveyed whatever interest US Bank owned after the defective foreclosure sale.

51.     After this deed was recorded, Defendant Pedro Taveras sought to enter Plaintiff's property without his consent.

52.     Defendant, Pedro Taveras threatened the Plaintiff and his family if they did not pay rent.

53.     Defendant, Pedro Taveras, also threatened the Plaintiff's tenants on the second floor if they did not pay rent to him.

54.     Defendant Pedro Taveras mailed the Plaintiff a Notice of Termination of Tenancy on May 18, 2018.

55.     Defendant, Pedro Taveras, through his attorney, filed a complaint for Eviction against the Plaintiff on June 4, 2018.

7

56.    The Plaintiff lives in the property with his wife and three minor children.

57.    If this eviction action is not enjoined, Plaintiff will suffer irreparable harm, in that the Plaintiff, will lose possession of his primary residence and he currently has no other place to reside.

### COUNT I
### VIOLATION OF THE PROVISIONS OF  RHODE ISLAND
### GENERAL LAWS § 34-27-3.2

58.    Paragraphs 1-57 are incorporated by reference.

59.    Rhode Island General Laws § 34-27-3.2 requires a mortgagee, or its servicing agent, to obtain a certificate of compliance before sending a notice of foreclosure sale under § 34-27-4 (b). See § 34-27-3.2 (d) (P.L. 2013, ch. 325, The mortgagee obtains a certificate of compliance from the mediation coordinator at Rhode Island Housing either by sending a required notice of a mediation conference to a mortgagor and not receiving a response from the mortgagor; See § 34-27-3.2 (h); or by participating in a mediation conference in good faith; See § 34-27-3.2 (i).

60.    Neither Selene nor US Bank complied with § 34-27-3.2 before sending the Notice of Mortgage Foreclosure Sale pursuant to § 34-27-4 (b). Neither US Bank nor Selene sent to the Plaintiff the required notice of mediation conference to the Plaintiffs, and did not participate in a mediation conference with Rhode Island Housing in good faith.

61.    The purported foreclosure deed contains a certificate dated June14, 2016 when Bank of America was the mortgagee. However once US Bank became the mortgagee on September 28, 2016, it was obliged to send the Plaintiff a Notice of Mediation before sending a Notice of Sale.

62.    Pursuant to 34-27-3.2 (n), because US Bank  and Selene on behalf of US Bank failed to comply with § 34-27-3.2, the foreclosure sale that occurred on July 20, 2017, was void, "without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section."

63.  Pursuant to 34-27-3.2 (n), because US Bank and Selene on behalf of US Bank failed to comply with § 34-27-3.2, the foreclosure sale that occurred on July 20, 2017, was void, "without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section." Plaintiff has filed this action within one year of the first notice of advertising of the notice of sale.

64.  Plaintiff has incurred damages as a result of the actions of Selene and US Bank as alleged in this complaint.

65.  Plaintiff has incurred legal fees for the prosecution of this action and will incur fees for defense of the eviction action in the Rhode Island 6th Division Court.

Wherefore Plaintiff demands the following relief:

A.  A declaration that the foreclosure sale of the Plaintiff's Property on July 20, 2017, was invalid and void;

B.  A declaration that the foreclosure deed recorded on July 20, 2017 in the land records for the City of Providence at Book 11807 Page 128, is invalid and void;

C.  Grant all other just and proper relief

HENRY SALAZAR
By his Attorney

June 25, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT II
## BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND DEALING

66.  Paragraphs 1-66 are incorporated by reference.

9

67.     Neither Korde, Selene or U.S. Bank have mailed the Plaintiff a notice in the form required pursuant to the provisions of paragraph 22 of the mortgage.

68.     Fannie Mae and FHFA were parties in the case of *Martins v. FHFA et al*, decided by this Court and were aware of the need for strict compliance with the terms of the mortgage before attempting to exercise the statutory power of sale, since that case was decided on October 11, 2016.

69.     Before an acceleration of the loan was declared, the Lender was required to send Plaintiff a notice to his home address which specified:

      a.    the default;

      b.    the action required to cure the default, stating a date, not less than 30 days from the date the notice was deposited in the United States mail that the default must be cured;

      c.    that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of our home

      d.    the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

70.     Paragraph 22 of Plaintiff's mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate**

10

payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

71.    The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

72.    There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

73.    Korde on behalf of Selene, on April 15, 2017, deposited into the United States a purported default letter which was dated April 14, 2017.

75.    The records of the United States Postal Service indicate that the purported default letter was deposited in the United States Postal Service Regional Facility in Boston , Massachusetts on April 15, 2017 at 12:42 AM.

76.    The law office of Korde is located in Lowell, Massachusetts.

77.    This letter did not comply with Paragraph 22 of the mortgage. It did not state a specific and unequivocal date to cure the mortgage loan, which was at least thirty days from the date that the letter was deposited in the United States mail.

75.    This letter stated that:

DEMAND   is hereby made against you to cure this default by May 14, 2017.

76. May 14, 2017 was twenty nine days after April 15, 2017, not thirty days

77. This letter did not state a specific date. Instead it indicated that the default had to be cured by May 14, 2017.

78. The phrase by is defined as "on or before". As a result, the letter demanded that the Plaintiff cure the default at any time from April 14, 2017 to May 14, 2017, which included dates within thirty days.

79. This letter did not specify a specific and accurate amount which had to be cured on a particular date.

80. The amount stated as $31,144.62 was not an accurate amount of the purported default. In fact the letter indicates that this amount was not accurate and that the Plaintiff could not rely on this number to cure the default. It stated:

In order to cure this default you must pay the total amount of $31,144.62 in addition to other amounts that become due from the date of this letter through the date that you pay.
Please contact this office to request the full amount owed on your account as the amount due on the day you pay may be greater than the amount stated above, due to interest, late charges and other charges or credits that may vary from day to day, or may be assessed after the date of this letter.

81. The language of the mortgage does not provide that the mortgagor was required to contact any party to obtain the amount necessary to cure the default.

82. The demand for $31,144.62 was not a specific amount necessary to cure this default as it required the Plaintiff to contact Korde for the exact amount to cure.

83. The mortgage does not require the mortgagor to contact the law firm for the loan servicer to obtain an accurate reinstatement amount.

84. The demand for $31,144.62 was an inaccurate amount.

85. This amount included the following unreasonable and unnecessary charges, which were charged by Selene Finance to the mortgage loan account contrary to the terms of the mortgage:

Unspecified Statutory expenses of $150.00 on November 30, 2016
Misc. Corporate Disbursement of $1.00 on November 17. 2016
Unspecified Corp Advance Adjustment of $90.00 on November 9, 2016
Unspecified Misc. Corporate Disbursement of $.42 on December 13, 2016
Unspecified Misc. Corporate Disbursement of $.47 on December 13, 2016
Unspecified Statutory Expenses of $4.56 on November 14, 2017
Unspecified Misc. Corporate Disbursement of $.30 on December 15, 2016
Unspecified Misc. F/C and B/R Expenses of $12.00 on December 21, 2016
Unspecified Misc. F/C and B/R Expenses of $12.00 on January 19, 2017
Unspecified Misc. Corporate Disbursement of $13.88 on January 25, 2017
Unspecified Misc. Corporate Disbursement of $.42 on January 25, 2017
Unspecified Statutory Expenses of $25.00 on February 8, 2017
Unspecified Misc. Corporate Disbursement of $2.00 on February 22, 2017
Unspecified Misc. F/C and B/R Expenses of $12.00 on February 24, 2017
Unspecified Property Preservation Fee of $.15 on February 28, 2017
Unspecified Statutory Expenses of $325.00 on February  28, 2017
Unspecified Misc. F/C and B/R Expenses of $15.50  on March 1, 2017
Unspecified Misc. F/C and B/R Expenses of $12.40  on March 1, 2017
Unspecified Misc. F/C and B/R Expenses of $12.00  on March 21, 2017

86.    This letter also not consistent with the terms of the mortgage, in that it indicated that Korde had been hired to commence a foreclosure proceeding not the exercise of the statutory power of sale.

87.    The terms of the mortgage authorized the exercise of the statutory power of sale, which could only be exercised by the mortgagee, which sought to foreclose sending the consumer a Notice of Sale, pursuant to the provisions of R.I.G.L. 34-27-4.

88.    However no mediation notice was mailed to the Plaintiff by Korde, Selene or US Bank as required by R.I.G.L 34-27-3.2.

89.    Plaintiff's mortgage loan was not in default in May, 2013, thus R.I.G.L 34-27-3.2. required that such a Notice of Mediation be mailed by Selene or US Bank.

90.    No such notice was sent, thus precluding the Defendants from exercising the statutory power of sale.

91.    This purported foreclosure sale, thus constituted a breach of contract, for which US Bank is liable.

13

92.     The failure of US Bank to comply with the terms of the mortgage rendered void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to exercise the statutory power of sale.

93.     The statutory power of sale could only be exercised pursuant to the Plaintiff being sent a default letter pursuant to the terms of the mortgage, followed by an acceleration letter, a Mediation Notice followed by a Certificate from Rhode Island Housing certifying that mediation notices were not responded to and a Notice of Sale pursuant to R.I.G.L.34-27-4.

94.     Due to this failure to comply with the terms of the mortgage, U.S. Bank was not contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property at any time.

95.     The actions of the Defendants constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

96.     Plaintiff's mortgage loan account has been charged unreasonable fees and expenses for the prior foreclosure attempt and for this attempt to foreclose.

97.     Plaintiff has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home and an eviction action by a purported purchaser.

98.     He has incurred legal fees for the defense of the eviction action.


WHEREFORE, Plaintiff demands the following relief:

    a.     Damages against US Bank for failure to comply with the terms of the mortgage.

    b.     Damages against US Bank for legal fees and actual damages arising from the breach of contract.

    c.     Damages against US Bank for charging the Plaintiff fees and costs charged to the mortgage loan account arising from the purported foreclosure attempt.

      d.    Legal fees from US Bank pursuant to the provisions of R.I.G.L § 9-1-45.

      e.    All other just and proper relief.

                    HENRY SALAZAR
                    By his Attorney

June 25, 2018             /s/ John B. Ennis
                    JOHN B. ENNIS, ESQ. #2135
                    1200 Reservoir Avenue
                    Cranston, Rhode Island 02920
                    (401) 943-9230
                    Jbelaw75@gmail.com

## COUNT III
## VIOLATIONS OF REGULATION X AND REGULATION Z

99.    Paragraphs 1-98 are incorporated by reference.

100.    This is an action for actual and statutory damages filed by the Plaintiff for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and specifically of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau (CFPB). This is also an action for actual and statutory damages filed by the Plaintiff for violations of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 et. seq. ("TILA").

101.    This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.

102.    Selene Finance, LP performs its mortgage loan servicing business under the name of Selene. It is the former servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real estate.

103.   In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

104.   Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z) (February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014 and were amended on April 19, 2018.

105.   The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

106.   The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers."  Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

107.   The Plaintiff is asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below.  The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

108.   On or about November 21, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

109.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number9407110898765001605252.

110.    The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

111.   The Notice was received by the Defendant on November 24, 2017.

16

112. A copy of the Notice of Error is attached as Exhibit L.

113. The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had added legal fees, advertising costs and other improper fees relating to an attempted foreclosure of Plaintiff's home without sending the Plaintiff a Notice of Mediation pursuant to R.I.G.L 34-27-3.2.

114. Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request. The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded. As a result, in this case, the written response was due no later than January 10, 2018.

115. Defendant did not correct the error within thirty business days. When it did respond on December 28, 2017, it failed to correct the error. It refused to remove any fees for the purported foreclosure. It refused to void the foreclosure sale and remove any fees from the mortgage loan account.

116. The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error relating to failure to provide mediation or for failure to provide a valid default notice prior to foreclosing.

117. As a result of this lack of compliance by the Defendant, Selene is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

118. The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.     He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 8.6 miles. The IRS standard mileage allowance provides for .56 per mile.

b.     He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney.

c.     He has incurred postage and copying costs in transmitting this Notice of Error.

17

d.    His mortgage loan has been charged improper fees and costs arising from the purported foreclosure without sending a valid default letter, pursuant to the terms of the mortgage.

e.    He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

119.    The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Selene to ignore this type of Regulation X Notice of Error.

120.    On or about November 21, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

121.    The Notice of Error was mailed by certified mail, return receipt requested, having an article number9407110898765001605368.

122    The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

123.    The Notice was received by the Defendant on November 24, 2017.

124.    A copy of the Notice of Error is attached as Exhibit J.

125.    The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had added legal fees, advertising costs and other improper fees relating to an attempted foreclosure of Plaintiff's home without sending the Plaintiff a default letter pursuant to the terms of the mortgage.

126.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request. The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than January 10, 2018.

127.   Defendant did not correct the error within thirty business days. When it did respond on  December 28, 2017,   it failed to correct the error. It refused to remove any fees for the purported foreclosure.   It refused to void the foreclosure sale and remove any fees from the mortgage loan account.

128.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint and in other responses to Notices of Error relating to failure to provide mediation or for failure to provide a valid default notice prior to foreclosing.

129.   As a result of this lack of compliance by the Defendant, Selene is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

130.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.      He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 8.6 miles.  The IRS standard mileage allowance provides for .56 per mile.

b.      He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney.

c.      He has incurred postage and copying costs in transmitting this Notice of Error.

d.      His mortgage loan has been charged improper fees and costs arising from the purported foreclosure without sending a valid default letter, pursuant to the terms of the mortgage.

e.      He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

131.   The failure of the Defendant to correct the Notices of Error in this case is consistent with the pattern and practice of Selene to ignore this type of Regulation X Notice of Error.

WHEREFORE, Plaintiff demands judgment for actual damages plus statutory

damages of $2,000.00 per violation for each of the enumerated Regulation X

violations, plus attorney fees and costs.


                                              HENRY SALAZAR
                                              By their Attorney

June 25, 2018                     /s/ John B. Ennis
                                  JOHN B. ENNIS, ESQ. #2135
                                  1200 Reservoir Avenue
                                  Cranston, Rhode Island 02920
                                  (401) 943-9230
                                  Jbelaw75@gmail.com

### COUNT IV
### COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY US BANK's FAILURE TO SEND THE PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638

132.   Paragraphs 1-133 are incorporated by reference.

134.   This is an action for damages brought by the Plaintiff, who is a consumer, for US Bank's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

135.   Specifically, Plaintiff seeks the remedies provided in TILA for Defendant's failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

136.   This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements. 15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00. Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

137.  The Defendant, Selene is a limited liability company, which services residential mortgage loans.  Selene is the servicer of the mortgage loan, which is the subject of this complaint

138.  US Bank claims to be the owner of the mortgage note and mortgage loan.

139.  The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

140.  Plaintiff was not sent an accurate periodic monthly in compliance with 12 C.F.R. 1026.41 since  June 25, 2017.

141.  Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, Fannie Mae was required to send the Plaintiff a monthly mortgage statement that provides the following information:

**(d)** *Content and layout of the periodic statement.*  The periodic statement required by this section shall include:
**(1)** *Amount due.*  Grouped together in close proximity to each other and located at the top of the first page of the statement:
**(i)** The payment due date;
**(ii)** The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and
**(iii)** The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.
**(2)** *Explanation of amount due.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:
**(i)** The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;
**(ii)** The total sum of any fees or charges imposed since the last statement; and
**(iii)** Any payment amount past due.
**(3)** *Past Payment Breakdown.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:
**(i)** The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest,

21

escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)** The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)** *Transaction activity.* A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)** *Partial payment information.* If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)** *Contact information.* A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)** *Account information.* The following information:

**(i)** The amount of the outstanding principal balance;

**(ii)** The current interest rate in effect for the mortgage loan;

**(iii)** The date after which the interest rate may next change;

**(iv)** The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

**(v)** The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

**(8)** *Delinquency information.* If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

**(i)** The date on which the consumer became delinquent;

**(ii)** A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

**(iii)** An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

**(iv)** A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

**(v)** A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

**(vi)** The total payment amount needed to bring the account current; and

**(vii)** A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

142.    None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since June 25, 2017.

143.    The Plaintiff has been charged advertising costs and attorney and foreclosure costs and improper property maintenance charges in various amounts relating to an advertised foreclosure sale on the decedent's mortgage loan account which was charged to the mortgage loan account and were reflected on the mortgage statements sent to the consumer for all dates since June 25, 2017. These charges were not appropriate due to the fact that the consumer was not provided a mediation notice pursuant to R.I.G.L. 34-27-3.2 or a proper default notice pursuant to the terms of the mortgage and the purported property inspection fees were not proper charges pursuant to the terms of the mortgage.

144.    Due to the improper charges for the foreclosure expenses each of the three statements sent to the Plaintiff were defective as these charges or portions of theme were included in all statements sent to the consumer by Wells Fargo.

145.    As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, US Bank is liable for actual damages and statutory damages of up to $4,000.00 for any inaccurate statements since June 25, 2017 which were not in conformity with 12 C.F.R. 1026.41 and TILA or were not sent to the Plaintiff at all.

146.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

      a.     He has incurred costs for gasoline to visit their attorney on at least five occasions, driving to his attorney's office for a round trip totaling 8.6 miles. The IRS standard mileage allowance provides for .56 per mile.

b.  He has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant.

c.  He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney.

d.  He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with their attorney provides that they will be responsible for legal fees expenses incurred in regard to this action.

WHERFORE, Plaintiff demands Judgment against US Bank for statutory damages of at least $4,000.00, for each failure to send a monthly mortgage statement in conformity with TILA since June 25, 2017 plus actual damages, plus attorney fees and costs and all other just and proper relief.

June 25, 2018

HENRY SALAZAR
By its Attorney

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY SELENE

147.  Paragraphs 1- 146 are incorporated by reference.

148.  Selene is debt collector as defined by 15 USC 1692 et seq.

149.  The primary business of Selene is the collection of debts.

24

150.   At the time that Selene commenced servicing of the Plaintiff's mortgage loan, the Plaintiff was in arrears.

151.   Since June 25, 2017 Selene has committed a violation of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

152.   Selene has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

153.   Selene has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of his property even through US Bank and Selene had no present right to possession of the property claimed as collateral through an enforceable security interest.  Specifically, it committed the following violations in this regard:

   a.   Selene on behalf of US Bank caused publication of three foreclosure advertisements of the sale of Plaintiff's home and hired an auctioneer to sell the property at a purported foreclosure sale.

   b.   Selene, through Korde conducted a purported foreclosure sale of Plaintiff's home on July 20, 2017 purportedly on behalf of US Bank, despite the fact that no default notice or mediation notice had been mailed to the Plaintiff

154.   The facts alleged in this complaint establish that US Bank did not have the present right to possession of the property claimed as collateral through an enforceable security interest.

155.   As alleged above, Selene violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take. It advised the consumer, that a sale would occur on June 28, 2017 despite the fact that no mediation notice had been sent by US Bank or Selene acting on its behalf and that a defective default letter had been sent to the Plaintiff.

156.   All the actions of Selene alleged in this complaint were designed to compel the Plaintiff to pay monies to US Bank and Selene on behalf of US Bank as alleged owner of the note and mortgage under the false threat of foreclosure of his home unless he made such a payment to Selene, through Korde on behalf of US Bank.

157.   Selene, has also through its attorney, threatened to evict the Plaintiff by two purported termination letters mailed to the Plaintiff in an attempt to collect a debt on behalf of US Bank as alleged above.

158.   The Plaintiff has incurred actual damages as a result of the violations of the FDCPA:

a.   Plaintiff has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for round trips totaling 8.6 miles. The IRS standard mileage allowance provides for .56 per mile.

b.   Plaintiff has used his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to his cell phone usage and monthly fees.

c.   Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

d.   He has incurred attorney fees and costs for the prosecution of this action.

e.   He has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home and a potential loss of his home, through an invalid foreclosure sale.

f.   He has incurred damages for having to defend an eviction against by Pedro Taveras due to the invalid foreclosure sale.

g.   His mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan more expensive to the Plaintiff

159.   As a result of the above described acts of Harmon, it is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff demands that Judgment be entered against   Selene for the following relief:

A.   Judgment against Selene for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA and legal fees and costs

B.   For all other just and proper relief.

HENRY SALAZAR
By their Attorney

June 25, 2018                    /s/ John B. Ennis
                                 JOHN B. ENNIS, ESQ. #2135
                                 1200 Reservoir Avenue
                                 Cranston, Rhode Island 02920
                                 (401) 943-9230
                                 Jbelaw75@gmail.com

## COUNT VI
## DECLARATORY JUDGMENT

160.   Paragraphs 1- 159 are incorporated by reference.

161.   This Court has jurisdiction to issue Declaratory Judgments.

162.   The failure of US Bank to comply with the terms of the mortgage, by virtue of a valid default notice and to provide mediation rendered the purported foreclosure void.

163.   The purported exercise of the statutory power of sale by US Bank on July 20, 2017, without a valid default notice and without a Notice of Mediation having been sent rendered the purported foreclosure void.

164.   As a result the purported deed recorded in the City of Providence should be vacated and rescinded.

165.   This Court has the power to declare that the aforementioned deed to be void and without any effect.

166.   Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore Plaintiff demands the following relief:

A. A declaration that the foreclosure sale of the Plaintiff's Property on July 20, 2017, was invalid and void;

B. A declaration that the foreclosure deed recorded on August 22, 2017, in the land records for the City of Providence at Book 11807 Page 128, is invalid and void;

C. Order Bank and Selene to pay back to Pedro Salazar any consideration that he paid for the property.


HENRY SALAZAR

By his Attorney

June 25, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT VII

### CLAIM FOR INJUNCTIVE RELIEF AND A PRELIMINARY AND PERMANENT INJUNCTION

167.   Paragraphs 1-166 are incorporated by reference.

168.   Plaintiff will be irreparably harmed if Defendant's improper exercise of the statutory power of sale without complying with the terms of the mortgage is not voided and Defendant, Pedro Taveras is allowed to obtain title to Plaintiff's home and is allowed to evict Plaintiff from his home despite the improper foreclosure sale of the Plaintiff's home.

169.   Plaintiff has a substantial likelihood of success in the pending action,

would otherwise suffer irreparable harm and can claim the greater hardship in
the absence of an order, which will not disserve the public interest if imposed.

170.    The failure of US Bank to comply with the terms of the
mortgage and for failure to send the Plaintiff a Notice of Mediation renders
void the alleged foreclosure by Statutory Power of Sale, without having the
contractual ability or statutory ability to exercise such Power.

171.    Plaintiff lives in this property, as his sole residence.

172.    These facts demonstrate that Plaintiff has a substantial likelihood of
success. Likewise a foreclosure of Plaintiff's property by a party not entitled to
foreclose on the property will cause Plaintiff irreparable harm, which hardship is
greater than any hardship, which may be claimed by defendant.

173.    Such relief sought by Plaintiff will not disserve the public interest if
imposed.

174.    Since there has been no compliance with the terms of the mortgage, any
alleged foreclosure is void

175.    Plaintiff has incurred legal fees and expenses due to the conduct
of the Defendant in not complying with the terms of the mortgage.

WHEREFORE, Plaintiff demands that this Court:

a.      Declare that all actions of US Bank in attempting to foreclose on
the Plaintiff's property, without complying with the terms of the mortgage
or the mediation statute are void.

b.      Grant a Preliminary Injunction Restraining and Enjoining  Pedro
Taveras and any other entity acting on its behalf from taking any action to
evict the Plaintiff from his home at 84 Merino Street, Providence, Rhode
Island pending a hearing on a Permanent  Injunction.

c.      Grant a Mandatory Injunction ordering US Bank and Selene to
reimburse Pedro Taveras for the payment it made to purchase the property.
d.      Grant all other just and proper relief.

e.      Award Plaintiff attorney fees for the prosecution of this action.

29

HENRY SALAZAR
By his Attorney

/s/ John B. Ennis

June 25, 2018

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com


Plaintiffs demand a Trial by Jury on all Claims Triable by a Jury

**STATE OF RHODE ISLAND**                 **SUPERIOR COURT**
**PROVIDENCE SC**

**HENRY SALAZAR**

     **VS.**                                 **CA PC2018-4561**

**SELENE FINANCE, LP**
**U.S. BANK NATIONAL ASSOCIATION AS**
**LEGAL TITLE TRUSTEE FOR**
**BCAT 2016-18TT**
**PEDRO TAVERAS**

### ADDENDUM TO COMPLAINT

     Plaintiff, by his attorney, files this Addendum to Complaint to

add documents, which could not be filed with the Complaint, due to space

limitations for online filing.


                        HENRY SALAZAR
                        By his Attorney


June 25, 2018                      /s/ John B. Ennis
                        JOHN B. ENNIS, ESQ. #2135
                        1200 Reservoir Avenue
                        Cranston, Rhode Island 02920
                        (401) 943-9230
                        Jbelaw75@gmail.com

d in Providence/Bristol County Superior Court
mitted: 6/25/2018 2:14 PM
elope: 1600850
iewer: Sharon S.

# EXHIBIT A

d in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
/elope: 1600850
/iewer: Sharon S,

Return To:  LOAN # 6404063064
            FL9-700-01-01
            JACKSONVILLE POST CLOSING
            BANK OF AMERICA
            9000 SOUTHSIDE BLVD.
            BLDG 700, FILE RECEIPT DEPT,
            JACKSONVILLE, FL 32256
Prepared By: MICHELLE SAWYER
            BANK OF AMERICA, N.A.
            900 W. TRADE STREET
            GATEWAY VILLAGE, 3RD FLOOR
            CHARLOTTE, NC  282550001

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

LOAN # 6404063064

Doc No: 00183756
Book: 8698   Page:        4

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MAY 29, 2007 together with all Riders to this document.

(B) "Borrower" is HENRY M SALAZAR



000005200   SALAZAR   HM

610  871571705  D2  001  002

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of THE UNITED STATES OF AMERICA

RHODE ISLAND – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3040 1/01

—6(RI) (0208)                    (rev. 11/02)
Page 1 of 16                     Initials: HS      CVRI 05/25/07 1:04 PM 6404063064
VMP MORTGAGE FORMS - (800)521-7291

21

Lender's address is 900 W. TRADE STREET, GATEWAY VILLAGE, 3RD FLOOR,
CHARLOTTE, NC 282550001
Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated MAY 29, 2007
The Note states that Borrower owes Lender TWO HUNDRED EIGHTY FIVE THOUSAND AND
00/100                                                                    Dollars
(U.S. $      285,000.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  JUNE 01, 2047
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners' association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and
restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan
does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _HS_

d in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
relope: 1600850
viewer: Sharon S,

Doc No: 00183756
Book: 8698    Page:    6

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the COUNTY                                             of     PROVIDENCE                                          :
           [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

Parcel ID Number: P 112 L 023                    which currently has the address of
84 MERINO STREET                                                              [Street]
PROVIDENCE                              [City], Rhode Island  02909       [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

Initials: HS

6(RI) (0206)                     Page 3 of 16                      Form 3040 1/01 (rev. 11/02)
     CVRI 05/25/07 1:04 PM 6404063064

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in

Doc No: 00183756
Book: 8698 Page: 9

a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and

Initials: _H.S_

-6(RI) (0208)          Page 6 of 16          Form 3040 1/01 (rev. 11/02)
CVRI 05/25/07 1:04 PM 6404063064

restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or

d in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
elope: 1600850
iewer: Sharon S.,

Doc No: 00183756
Book: 8698 Page: 11

with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for

id in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
elope: 1600850
iewer: Sharon S.

Doc No: 00183756
Book: 8698 Page: 12

Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair

Initials: _HS_

—6(RI) (0209)          Page 9 of 16          Form 3040 1/01 (rev. 11/02)
.CVRI 05/25/07 1:04 PM 6404063064

market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

Doc No: 00183756
Book: 8698 Page: 14

charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

. If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If

Initials: _HS_

ed in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
elope: 1600850
iewer: Sharon S.

Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower

pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender

ed in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
elope: 1600850
iewer: Sharon S.

Doc No: 00183756
Book: 8698 Page: 17

at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall apply any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Outstanding Automatic Orders in Domestic Relations Cases. Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

25. Homestead Estate. If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

Initials: _HS_

-6(RI) (0208)
CVRI 05/25/07 1:04 PM 6404063064

Page 14 of 16

Form 3040 1/01 (rev. 11/02)

Doc No: 00183756
Book: 8698   Page:   18

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____   _Henry Salazar_____ (Seal)
HENRY M SALAZAR                              -Borrower

_____   _____ (Seal)
                                             -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                    -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                    -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                    -Borrower

—6(RI) (0208)                Page 15 of 16        Form 3040 1/01 (rev. 11/02)
                             CVRI 05/25/07 1:04 PM 6404063064

d in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
elope: 1600850
iewer: Sharon S.

**STATE OF RHODE ISLAND,**
County ss: _Providence_

On this 29 th day of MAY, 2007 , in _Central Falls._ , in said County, before me personally appeared

Henry M. SALAZAR.

each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be his/her/their free act and deed.



_____
Notary Public

Alberto Aponte Cardona
State of Rhode Island
**Notary Public**
My Commission Expires 4/12/2008

```
Doc No: 00183756
Book: 8698  Page:    20
```

LOAN # 6404063064

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this   29TH  day of  MAY, 2007                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to  BANK OF
AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at 84 MERINO STREET, PROVIDENCE, RI 02909

(Property Address)

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the Property described in Security Instrument, the following items now or
hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security
Instrument: building materials, appliances and goods of every nature whatsoever now
or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath tubs,
water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached
floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument.
All of the foregoing together with the Property described in the Security Instrument
(or the leasehold estate if the Security Instrument is on a leasehold) are referred to in
this 1-4 Family Rider and the Security Instrument as the "Property."

**MULTISTATE 1-4 FAMILY RIDER**                    M57F 05/25/07 1:04 PM 6404063064

Page 1 of 4
**BS57R (0411)**        VMP Mortgage Solutions, Inc. (800)521-7291

ed in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
relope: 1600850
Viewer: Sharpn S.

Doc No: 00183756
Book: 8698 Page: 21

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of

**Page 2 of 4**

taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.    CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_Henry Salazar_ _____ (Seal)
HENRY M SALAZAR                                      -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

BS57R (0411)            Page 4 of 4          MS7F 05/25/07 1:04 PM 6404063064

## EXHIBIT "A"

That certain lot or parcel of land, with all the buildings and improvements thereon, situated on the westerly side of Merino Street, in the City of Providence, State of Rhode Island, laid out and designated as Lot No. 61 on that plat entitled, "Plat of the Alverson House Lots Belonging to Nelson D. Alverson By P. Phalen Aug. 1871", which plat is recorded in the office of the Recorder of Deeds of the City of Providence, a copy thereof being on Plat Card 825.

Said lot is bounded and described as follows: Beginning at a point in the westerly line of Merino Street, at the northeasterly corner of land now or lately of Frank J. Zito and wife and the southeasterly corner of the premises herein described and running thence westerly bounding southerly on said Zito land a distance of one hundred (100) feet to land now or lately of Joseph G. Burgess and wife, life tenants; thence turning and running northerly bounding westerly on said Burgess land a distance of fifty (50) feet to land now or lately of Vito DiAmbra and wife; thence turning and running easterly bounding northerly on said last named land a distance of one hundred (100) feet to Merino Street; thence turning and running southerly bounding easterly on said Merino Street a distance of fifty (50) feet to said Zito land and the point and place of beginning.

PROPERTY ADDRESS
84 MERINO STREET
PROVIDENCE, RI

PLAT 112
LOT 23

RECEIVED:

Providence
Received for Record
May 30, 2007 at 03:05:20P
Document Num:   00183756
Barbara Troncs
Recorder of Deeds

# EXHIBIT B

Doc No: 00159671
Book:11585 Page: 171

AER3313111350

Prepared By:
Bank of America, N.A.
1800 Tapo Canyon Road
Simi Valley, CA 93063
**WHEN RECORDED RETURN TO:**
Westcor Land Title Insurance
600 West Germantown Pike, Ste. 450
Plymouth Meeting, PA 19462

Parcel: 13-44-24-P3-00607.0320

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, BANK OF AMERICA, N.A., located at 1800 Tapo Canyon Road,
Simi Valley, CA 93063 ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: U.S. BANK, N.A., NOT
IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE FOR BCAT 2016-18TT,
located at 60 Livingston Avenue, St. Paul, MN 55107("ASSIGNEE/GRANTEE") all beneficial interest under that
certain MORTGAGE, dated 5/29/2007 and executed by HENRY M. SALAZAR, borrower(s) to: BANK OF
AMERICA, N.A., as original lender, and certain instrument recorded 5/30/2007, in Book: 8698, Page: 4, Inst. #
183756, in the Official Records of Providence County, the State of RhodeIsland, given to secure a certain
Promissory Note in the amount of $285,000.00 covering property located at: 84 MERINO ST, PROVIDENCE,
RHODEISLAND 02909.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due
thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have
reconveyed, in whole or in part, the real property described therein.

Doc No: 00159671
Book:11585 Page: 172

Dated: 10/25/2016

ASSIGNOR: BANK OF AMERICA, N.A., by Westcor Land
Title Insurance Company, Attorney In Fact*

By: _____

Name: Jeffrey Williams

Title: Authorized Signatory

*Power of attorney recorded in Maricopa County, AZ at Inst. #
20160771048

State of: Pennsylvania

County of: Montgomery

Before me, Barbara Joachim, duly commissioned Notary Public, on this day personally appeared Jeffrey
Williams, Authorized Signatory, BANK OF AMERICA, N.A., by Westcor Land Title Insurance Company,
Attorney In Fact, known to me (or proved to me on the oath of _____ or through _____) to
be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 25th day of October, 2016.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Barbara A. Joachim, Notary Public
Springfield Twp., Delaware County
My Commission Expires March 10, 2019

Notary Public's Signature

Printed Name: Barbara Joachim

My Commission Expires: 3/10/2019

Property Address: 84 MERINO ST, PROVIDENCE, Rhode Island 02909

Providence
Received for Record
Dec 12 2016  at  12:26P
Document Num:   00159671
John A Murphy
Recorder of Deeds

d in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
elope: 1600850
iewer: Sharon S.

# EXHIBIT C

d in Providence/Bristol County Superior Court
omitted: 6/25/201
elope: 1600850
iewer: Sharon S

# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

April 14, 2017

FIRST CLASS & CERTIFIED MAIL

Henry M. Salazar
84 Merino Street
Providence, RI 02909

Certified Article Number

9414 7266 9904 2093 3555 29

SENDERS RECORD

RE: NOTICE OF DEFAULT
Property Address: 84 Merino Street, Providence, RI 02909
Our File No. 17-028693

Dear Sir/Madam:

THIS IS AN ATTEMPT TO COLLECT A DEBT, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Please be advised that this firm has been retained by Selene Finance LP as servicer for U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT (the "Mortgagee") to commence foreclosure proceedings on the above-entitled premises for breach of the covenants of the mortgage of Henry M. Salazar to Bank of America, N.A. dated May 29, 2007 in the original principal amount of $285,000.00 recorded in Book 8698 at Page 4 in the Records of Land Evidence in the City of Providence, RI, which mortgage secures a Note from Henry M. Salazar to Bank of America, N.A. of same date and original principal amount. Selene Finance LP services your mortgage on behalf of U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT.

Specifically, the aforesaid Note and Mortgage are in default as payments of principal and/or interest have not been made in accordance with the terms and conditions of the Note and Mortgage. Your loan is in default for the February 1, 2016 payment and all the payments due each month thereafter, as provided in said Note. The amount required to cure the default as of the date of this letter is $31,144.62. DEMAND is hereby made against you to cure this default by May 14, 2017. In order to cure this default, you must pay the total amount of $31,144.62 in addition to other amounts that become due from the date of this letter through the date you pay (the "arrearage"). On the day that you intend to pay, please contact this office to request the full amount owed on your account as the amount due on the day you pay may be greater than stated above, due to interest, late charges and other charges or credits that may vary from day to day, or may be assessed after the date of this letter. The necessary amount must be received in certified funds.

You are advised that unless the arrearage is received by the Mortgagee, c/o Korde & Associates, P.C., 900 Chelmsford Street, Suite 3102, Lowell, MA 01851 by May 14, 2017, the Mortgagee may accelerate the payment of all sums secured by the aforesaid mortgage and may exercise all rights as set forth under the power of sale contained in said mortgage, including a foreclosure sale of the mortgaged premises. Please be advised that you have the right to reinstate after acceleration and you have the right to bring a court action to assert the non-existence of a default or any other defense which you have to the acceleration and the sale of the mortgaged premises.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If, within the thirty-day period, you notify this office in writing that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and mail a copy of such verification to you. If requested within 30 days of receipt of this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you personally.

Please give this your immediate attention.

Very truly yours,

Shana L. Costa
SLC/dv

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

17-028693 / FC01

d in Providence/Bristol County Superior Court
mitted: 6/25/2018 2:14 PM
elope: 1600850
iewer: Sharon S.

# EXHIBIT D

# KORDE & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

## NOTICE TO SERVICEMEMBERS

A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.

Excerpt from Rhode Island General Laws Section 34-27-4:

(d) Foreclosure sales affecting servicemembers.-
    (1) The following definitions shall apply to this subsection and to subsection (c):
        (i) "Servicemember" means a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard and members of the National Guard or Reserves called to active duty.
        (ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the National Guard, or Reserves "active duty" means and includes service under a call to active service authorized by the President or the Secretary of Defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the President and supported by federal funds.

    (2) This subsection applies only to an obligation on real and related personal property owned by a service member that:
        (i) Originated before the period of the servicemember's military service or in the case of a member of the National Guard or Reserves originated before being called into active duty and for which the servicemember is still obligated; and
        (ii) Is secured by a mortgage or other security in the nature of a mortgage.

    (3) Stay of right to foreclose by mortgage. – Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

    (4) Stay of proceedings and adjustment of obligation. – In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of

active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

      (i) Stay the proceedings for a period of time as justice and equity require; or

      (ii) Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) Sale or foreclosure.- A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

      (i) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

      (ii) If made pursuant to an agreement of all parties.

(6) Penalties.- A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearings on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

:d in Providence/Bristol County Superior Court
omitted: 6/25/2018 2:14 PM
/elope: 1600850
/iewer: Sharon S.

# EXHIBIT E

Doc No: 00179405
Book:11807 Page: 128

## STATUTORY FORM OF FORECLOSURE DEED
## UNDER POWER OF SALE IN MORTGAGE

U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT, with a place of business located at c/o Selene Finance LP, 9990 Richmond Avenue, Suite 400S, Houston, Texas 77042, holder of a mortgage by Henry M. Salazar dated May 29, 2007, and recorded in the Records of Land Evidence on May 30, 2007 in Providence, State of Rhode Island, in Land Evidence Book 8698, Page 4 by the power conferred by said mortgage and by every other power it thereunto enabling, for One Hundred Twenty-Eight Thousand Dollars and No Cents ($128,000.00) paid, grants to U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT of the premises conveyed by said mortgage, described as follows:

That certain lot or parcel of land, with all the buildings and improvements thereon, situated on the westerly side of Merino Street, in the City of Providence, State of Rhode Island, laid out and designated as Lot No, 61 on that plat entitled, "Plat of the Alverson House Lots Belonging to Nelson D. Alverson By P. Phalen Aug. 1871", which plat is recorded in the office of the Recorder of Deeds of the City of Providence, a copy thereof being on Plat Card 825,

Said lot is bounded and described as follows; Beginning at a point in the westerly line of Merino Street, at the northeasterly corner of land now or lately of Frank J. Zito and wife and the southeasterly corner of the premises herein described and running thence westerly bounding southerly on said Zito land a distance of one hundred (100) feet to land now or lately of Joseph G. Burgess and wife, life tenants; thence turning and running northerly bounding westerly on said Burgess land a distance of fifty (50) feet to land now or lately of Vito DiAmbra and wife; thence turning and running easterly bounding northerly on said last named land a distance of one hundred (100) feet to Merino Street; thence turning and running southerly bounding easterly on said Merino Street a distance of fifty (50) feet to said Zito land and the point and place of beginning.

PROPERTY ADDRESS 84 MERINO STREET PROVIDENCE, RI
PLAT 112 LOT 23

Conveyance is made subject to local, state and federal taxes, assessments and charges, if any, which would constitute a prior lien thereon; and to restrictions, covenants and easements of record, if any.



Filed in Providence/Bristol County Superior Court
Submitted: 6/26/2018 4:19:23 PM
Envelope: 1640662
Reviewer: Dawn Capobianco

This transfer of property is such that there are no net proceeds subject to the withholding provisions of R.I.G.L. 44-30-71.3 because there was no net gain or surplus proceeds derived from the foreclosure sale.

IN WITNESS WHEREOF U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT by its Attorney in Fact, Selene Finance LP has caused this instrument to be executed by its duly authorized signor this ___ day of _____, 2017.

> U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT
> By: Selene Finance LP
> Its: Attorney in Fact
>
> By: _____
> Name:      Evan Shafer
> Title:        Team Lead - Foreclosure

*See Power of Attorney recorded herewith.

STATE OF ____Florida____
COUNTY OF ____Duval____

In ____Duval____ County on the ____August 8____, 2017, before me personally appeared ____Evan Shafer____ of Selene Finance LP, Attorney in Fact for U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT to me known and known by me to be the party executing the foregoing instrument, and he/she acknowledges said instrument by him/her executed to be his/her free act and deed in his/her said capacity and the free act and deed of said U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT.

Alton Horton
Commission #FF 152104
Expires: AUG 18, 2018
for FLORIDA NOTARY, LLC

Notary Public: ____Alton Horton____
My commission expires: 8-18-2017

Filed Providence/Bristol County Superior Court
3rd in 6th Division District Court
Omitted: 3/8/2018 4:19:23 PM
Velope: 1440880
Velope: 1440880
Viewer: Sharon L
Viewer: Dawn Capobianco

## AFFIDAVIT OF SALE UNDER
## POWER OF SALE IN MORTGAGE

I, __Anthony D'Addona__ (name), __Foreclosure Manager__ (title) of Selene Finance LP as Attorney in Fact, for U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT the Grantor named in the foregoing deed, make oath and say that the principal and interest obligations mentioned in the mortgage above-referred to were not paid or tendered or performed when due or prior to the date of sale, and that The Law Offices of Korde & Associates, P.C. caused to be published on June 28, 2017, July 5, 2017 and July 12, 2017 in the Providence Journal, a public newspaper published in Providence in accordance with the provisions of said mortgage, a notice of said sale of which the following is a true copy:

**MORTGAGEE'S SALE**
84 Merino Street,
Providence, RI 02909
The premises described in the mortgage will be sold subject to all encumbrances and prior liens on July 20, 2017 at 1:00PM on the premises, by virtue of the power of sale contained in a mortgage from Henry M. Salazar dated May 29, 2007 and recorded in Book 8698 at Page 4 in the Records of Land Evidence in the City of Providence, RI, the conditions of said mortgage having been broken.
$5,000.00 in cash, certified or bank check is required to bid. Other terms will be announced at the sale.
By order of the Mortgagee which gives notice of its intention to bid at such sale or any postponement or adjournment thereof.
KORDE & ASSOCIATES, P.C.
Attorneys for the Holder of the Mortgage
900 Chelmsford Street
Suite 3102
Lowell, MA 01851
(978) 256-1500
(6/28/2017, 7/5/2017, 7/12/2017) 17-028693

Assessors Plat 112, Lot 23

Property Address: 84 Merino Street, Providence, RI 02909

17-028693 / FC01

Doc No: 00179405
Book#11807 Page: 131

I the undersigned make oath and say that pursuant to R.I.G.L. 34-11-22 and 34-27-4, the Law Office of Korde & Associates, P.C. mailed, or caused to be mailed, on May 26, 2017 by certified mail, return receipt requested, written notice of the time and place of foreclosure sale to the record owner(s) as required by R.I.G.L. 34-11-22 and 34-27-4. A copy of said notice is made a part hereof as Addendum "A".

Pursuant to said notice, at the time and place therein appointed, U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT sold the mortgaged premises at public auction by Richard C. Jumpp of The Jumpp Company an auctioneer duly licensed by the State of Rhode Island to U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT of for One Hundred Twenty-Eight Thousand Dollars and No Cents ($128,000.00) by he/she/them paid, being the highest bid made for said premises at said auction.

To the best of my knowledge, information, and belief the record owner(s) of the property described in said mortgage Henry M. Salazar, was not "a person in the Military Service" of the United States of America, as defined by the Soldiers' and Sailors' Civil Relief Act of 1940 and the Servicemembers Civil Relief Act, as amended, and was not in the "Military Service" as defined by said Act at the time of the commencement of the within foreclosure proceedings or at the time of sale under the power given by said mortgage or at any time within the period of twelve months immediately preceding said sale.

I further make affidavit and say that the above facts have been ascertained after investigation duly made and that I am familiar with the contents of said Soldiers' and Sailors' Civil Relief Act of 1940 and the Servicemembers Civil Relief Act, as amended.

I further on oath say that pursuant to R.I.G.L. 34-27-4(c) and (d), the Law Office of Korde & Associates, P.C. mailed, or caused to be mailed, on May 26, 2017 by first class mail and by certified mail, return receipt requested, written notice as required by R.I.G.L. 34-27-4(c) and (d).

U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT mailed, or caused to be mailed on April 4, 2016 by first class mail and certified mail, return receipt requested, written notice of the Mortgagors' right to a mediation conference as required by R.I. G.L. 34-27-3.2 in English, Spanish and Portuguese Languages.

U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT
By: Selene Finance LP
Its: Attorney in Fact

By: _Cynthony D'Addone_
Name: Anthony D'Addona
Title: Foreclosure Manager

*See Power of Attorney recorded herewith.

STATE OF ___Florida___
COUNTY OF ___Duval___

Subscribed and sworn to before me this 16 day of August, 2017.

Notary Public: Alton Horton
My commission expires: 6-14-206

Alton Horton
Commission # FF 152104
Expires AUG 18, 2018
1ST FLORIDA NOTARY, LLC

Assessors Plat 112, Lot 23

Property Address: 84 Merino Street, Providence, RI 02909

17-024693 / FC01



# KORDE & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

Certified Article Number

9414 7266 9904 2093 4047 53

SENDERS RECORD

May 26, 2017

Henry M. Salazar
84 Merino Street
Providence, RI 02909

**Addendum A**

VIA FIRST CLASS MAIL &
CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 17-028693/Salazar

RE: Bank of America, N.A. dated May 29, 2007 and as recorded on May 30, 2007 at 3:05:20PM in Book 8698 at Page 4 in the Records of Land Evidence in the City of Providence, RI
Property Address: 84 Merino Street, Providence, RI 02909

Dear Sir/Madam:

Please be advised that I have been instructed by the Holder of the Mortgage to commence a foreclosure of the property at 84 Merino Street, Providence, RI 02909. The property will be sold at a public auction on July 20, 2017 at 1:00PM on the premises of said 84 Merino Street, Providence, RI 02909.

A copy of the Notice of Sale, which is to be published in the Providence Journal on June 28, 2017, July 5, 2017 and July 12, 2017 concerning this foreclosure is attached hereto.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. If, however, the debt secured by your mortgage has been discharged in bankruptcy, no demand for payment of the loan is being made and this letter is solely intended to advise you of the pending liquidation of the loan.

In the event that there is a deficiency resulting from said foreclosure, proceedings may be instituted against you for the purpose of collecting said deficiency.

If you have any questions regarding this matter, please contact my office.

Very truly yours,

Shana L. Costa

SLC/ke

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

# KORDE & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

### NOTICE TO SERVICEMEMBERS

**A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.**

Excerpt from Rhode Island General Laws Section 34-27-4:

(d) Foreclosure sales affecting servicemembers.-

    (1) The following definitions shall apply to this subsection and to subsection (c):

        (i) "Servicemember" means a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard and members of the National Guard or Reserves called to active duty.

        (ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the National Guard, or Reserves "active duty" means and includes service under a call to active service authorized by the President or the Secretary of Defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the President and supported by federal funds.

    (2) This subsection applies only to an obligation on real and related personal property owned by a service member that:

        (i) Originated before the period of the servicemember's military service or in the case of a member of the National Guard or Reserves originated before being called into active duty and for which the servicemember is still obligated; and

        (ii) Is secured by a mortgage or other security in the nature of a mortgage.

    (3) Stay of right to foreclose by mortgagee. – Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

    (4) Stay of proceedings and adjustment of obligation. – In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

 in Providence/Bristol County Superior Court
38 in 6th Division District Court
Printed: 5/25/2018 4:19:23 PM
Alpha: 1946889
Value: 1946889
Viewer: Sharon C S
Viewer: Dawn Capobianco

active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i) Stay the proceedings for a period of time as justice and equity require; or

(ii) Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) Sale or foreclosure.- A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii) If made pursuant to an agreement of all parties.

(6) Penalties.- A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearings on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

Filed in Providence/Bristol County Superior Court
Submitted: 9/28/2018 4:19:23 PM
Envelope: 1740089
Reviewer: Sharon C.
Viewer: Dawn Capobianco



# KORDE & ASSOCIATES, P.C.

### ATTORNEYS AT LAW

Doc No: 00179405
Book11803 Page135

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

Certified Article Number

9434 7266 9904 2093 4047 15

SENDERS RECORD

May 26, 2017

Henry M. Salazar
84 Merino Street 1st
Providence, RI 02909

VIA FIRST CLASS MAIL &
CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 17-028693/Salazar

RE:    Bank of America, N.A. dated May 29, 2007 and as recorded on May 30, 2007 at 3:05:20PM in
        Book 8698 at Page 4 in the Records of Land Evidence in the City of Providence, RI
        Property Address: 84 Merino Street, Providence, RI 02909

Dear Sir/Madam:

        Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 84 Merino Street, Providence, RI 02909. The property will be sold at a
public auction on July 20, 2017 at 1:00PM on the premises of said 84 Merino Street, Providence, RI
02909.

        A copy of the Notice of Sale, which is to be published in the Providence Journal on June 28,
2017, July 5, 2017 and July 12, 2017 concerning this foreclosure is attached hereto.

        THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE. If, however, the debt secured by your mortgage has been
discharged in bankruptcy, no demand for payment of the loan is being made and this letter is solely
intended to advise you of the pending liquidation of the loan.

        In the event that there is a deficiency resulting from said foreclosure, proceedings may be
instituted against you for the purpose of collecting said deficiency.

        If you have any questions regarding this matter, please contact my office.

Very truly yours,

Shana L. Costa

SLC/ke

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Filed in Providence/Bristol County Superior Court
Submitted: 3/27/2018 3:13 PM
Envelope: 1490662
Reviewer: Dawn Capobianco



# KORDE & ASSOCIATES, P.C.

Doc. No.: 00178405

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

## NOTICE TO SERVICEMEMBERS

**A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.**

Excerpt from Rhode Island General Laws Section 34-27-4:

(d) Foreclosure sales affecting servicemembers.-
    (1) The following definitions shall apply to this subsection and to subsection (c):
        (i) "Servicemember" means a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard and members of the National Guard or Reserves called to active duty.
        (ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the National Guard, or Reserves "active duty" means and includes service under a call to active service authorized by the President or the Secretary of Defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the President and supported by federal funds.

    (2) This subsection applies only to an obligation on real and related personal property owned by a service member that:
        (i) Originated before the period of the servicemember's military service or in the case of a member of the National Guard or Reserves originated before being called into active duty and for which the servicemember is still obligated; and
        (ii) Is secured by a mortgage or other security in the nature of a mortgage.

    (3) Stay of right to foreclose by mortgagee. – Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

    (4) Stay of proceedings and adjustment of obligation. – In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Filed in Providence/Bristol County Superior Court
Submitted: 3/6/2018 4:19:23 PM
Envelope: 1448882
Reviewer: Sharon C.S.

31 in 6th Division District Court
Printed: 3/6/2018 4:19:23 PM
Viewer: Dawn Capobianco

active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i) Stay the proceedings for a period of time as justice and equity require; or

(ii) Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) Sale or foreclosure.- A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii) If made pursuant to an agreement of all parties.

(6) Penalties.- A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearings on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

Filed in Providence/Bristol County Superior Court
Id in 6th Division District Court
Omitted: 5/6/2018 4:19:23 PM
Envelope: 1540862
Viewer: Shaun Q...
Viewer: Dawn Capobianco



# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

Certified Article Number

May 26, 2017

Narragansett Bay Commission
One Service Road
Providence, RI 02905

9414 7266 9904 2093 4047 22

SENDERS RECORD

CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 17-028693/Salazar

RE:   Bank of America, N.A. dated May 29, 2007 and as recorded on May 30, 2007 3:05:20PM in
      Book 8698 at Page 4 in the Records of Land Evidence in the City of Providence, RI
      Property Address: 84 Merino Street, Providence, RI 02909

Dear Sir/Madam:

Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 84 Merino Street, Providence, RI 02909. The property will be sold at a
public auction on July 20, 2017 at 1:00PM on the premises of said 84 Merino Street, Providence, RI
02909.

A copy of the Notice of Sale, which is to be published in the Providence Journal on June 28,
2017, July 5, 2017 and July 12, 2017 concerning this foreclosure is attached hereto.

If you have any questions regarding this matter, please contact my office.

Very truly yours,

Shana L. Costa

Doc No: 00179405
Book:11807  Page:  138

SLC/ke

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

d in Providence/Bristol County Superior Court
d in 6th Division District Court
mitted: 5/6/2018 4:19:23 PM
elope: 1540882
iewer: Shana S
iewer: Dawn Capobianco



# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

May 26, 2017

Certified Article Number

~~9434 7266 9904 2093 4047 39~~

SENDERS RECORD

Rhode Island Housing
43 Jefferson Boulevard
Warwick, RI 02888

CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 17-028693/Salazar

### Notice of Intent to Foreclose

RE:  Bank of America, N.A. dated May 29, 2007 and as recorded on May 30, 2007 3:05:20PM in
Book 8698 at Page 4 in the Records of Land Evidence in the City of Providence, RI
Property Address: 84 Merino Street, Providence, RI 02909
CERTIFICATE OF COMPLIANCE ISSUED: 6/14/2016

Dear Sir/Madam:

Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 84 Merino Street, Providence, RI 02909. The property will be sold at a
public auction on July 20, 2017 at 1:00PM on the premises of said 84 Merino Street, Providence, RI
02909.

A copy of the Notice of Sale, which is to be published in the Providence Journal on June 28,
2017, July 5, 2017 and July 12, 2017 concerning this foreclosure is attached hereto.

If you have any questions regarding this matter, please contact my office.

Very truly yours,

Shana L. Costa

SLC/ke

Doc No: 00179405
Book:11807 Page: 139

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

ty in Providence/Bristol County Superior Court
d in 6th Division District Court
mitted: 3/27/2018 4:19:23 PM
/elope: 1540680
/elope: 1540680
/iewer: Sharon S
/iewer: Dawn Capobianco



# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

Certified Article Number

9414 7266 9904 2093 4047 46

SENDERS RECORD

May 26, 2017

City of Providence
25 Dorrance Street
Providence, RI 02903

CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #:  17-028693/Salazar

RE:  Bank of America, N.A. dated May 29, 2007 and as recorded on May 30, 2007 3:05:20PM in
Book 8698 at Page 4 in the Records of Land Evidence in the City of Providence, RI
Property Address: 84 Merino Street, Providence, RI 02909
CERTIFICATE OF COMPLIANCE ISSUED: 6/14/2016

Dear Sir/Madam:

Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 84 Merino Street, Providence, RI 02909. The property will be sold at a
public auction on July 20, 2017 at 1:00PM on the premises of said 84 Merino Street, Providence, RI
02909.

A copy of the Notice of Sale, which is to be published in the Providence Journal on June 28,
2017, July 5, 2017 and July 12, 2017 concerning this foreclosure is attached hereto.

If you have any questions regarding this matter, please contact my office.

Very truly yours,

Shana L. Costa

SLC/ke

Doc No: 00179405
Book:11807  Page:  140

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM — 5:30PM, EST MONDAY THRU FRIDAY

---

---

**AFFIDAVIT**

Property Address: 84 Merino Street
Providence, Rhode Island

Doc No: 00179405
Book:11807 Page: 142

Mortgage: Henry M. Salazar to Bank of America, N.A., dated May 30, 2007 and recorded with the City of Providence Land Evidence Records in Book 8698, Page 4.

Foreclosing Mortgagee: U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT

The undersigned, Susan W. Cody, Esq., having personal knowledge of the facts herein stated, under oath deposes and says as follows:

1. I am an attorney at law duly licensed in the State of Rhode Island and am an attorney of the Law Firm known as Korde & Associates, P.C. (the "Firm") and as such have access to all of the records of the Firm. I have personally reviewed the file and records of the Firm in connection with the Mortgage and its related foreclosure.

2. The Firm was retained by Selene Finance LP as servicer for U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT to conduct a mortgage foreclosure relative to the Mortgage and in connection thereto the Firm prepared and mailed by first class mail and by certified mail return receipt requested notices of default to the Borrower, Henry M. Salazar on April 14, 2017.

3. All notices, requirements and conditions precedent were made and or satisfied in strict compliance with the terms of the mortgage.

Signed under the pains and penalties of perjury this ___25th___ day of ___July___, 20.17

Susan W. Cody, Esq.

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF MIDDLESEX

Sworn to (or affirmed) and subscribed before me this ___25th___ day of ___July___, 207, By Susan W. Cody, Esq.

Notary Public:
My commission expires:

ELLEN M. FITZPATRICK
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
June 8, 2018

[✓] Personally Known

[ ] Produced Identification Type of Identification Produced:

Doc No: 00179405
Book:11807  Page:  143

## AFFIDAVIT OF COMPLIANCE WITH R.I. GEN. LAWS § 34-27-3.2 (m)

STATE OF ~~Texas~~  Florida

COUNTY OF ~~Harris~~  Duval     ss: ~~Houston~~     Jacksonville

Personally appeared, who being duly sworn, affirms under oath that:

1. My name is _____ Evan Shafer _____ and I am ___ Team Lead – Foreclosure (title) of Selene Finance LP, named in the foregoing deed. I am authorized to execute this Affidavit on behalf of U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT, and the statements made in this Affidavit are made upon my personal knowledge based on a review of the business records of Selene Finance LP. I am over the age of 18, and I am fully competent to testify to the matters contained herein.

2. U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT is the holder of a mortgage by Henry M. Salazar dated May 29, 2007, and recorded in the Records of Land Evidence on May 30, 2007 in Providence, State of Rhode Island, in Land Evidence Book 8698, Page 4 ("Mortgage").

3. In my capacity as stated above, I have access to Selene Finance LP's business records, including the business records for and relating to the Mortgage. I make this Affidavit based upon my review of those records relating to the Mortgage and from my own personal knowledge of how they are kept and maintained. The records for the Mortgage are maintained by Selene Finance LP in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is the regular practice of Selene Finance LP to keep such records in the ordinary course of a regularly conducted business activity.

4. I reviewed and relied upon Selene Finance LP's business records for the statements made in this Affidavit.

5. U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT mailed, or caused to be mailed on April 4, 2016 by first class mail and certified mail, return receipt requested, written notice of the Mortgagors' right to a mediation conference as required by R.I. G.L. 34-27-3.2 in English, Spanish and Portuguese Languages. Selene Finance LP designated an authorized representative to participate in the Mediation Conference on its behalf. Said representative had authority to agree to a workout agreement on behalf of U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT. Selene Finance LP made reasonable efforts to respond timely to requests for information from the Mediation Coordinator, Mortgagor, and/or counselor assisting the Mortgagor. Following notice of the mortgagors' right to a mediation conference, the following occurred [check the applicable outcome as indicated on the Mediation Coordinator's Certificate]:

☒ The Mediation Coordinator determined that after two attempts by the Mediation Coordinator to contact the Mortgagor and Owner, the Mortgagor failed to respond to the requests to appear for the Mediation Conference or otherwise participate in the Mediation Conference.

☐ The Mediation Coordinator determined that the Mortgagor and Owner failed to comply with the requirements of R.I. Gen. Laws § 34-27-3.2.

☐ The parties were unable to reach an agreement to renegotiate the loan in order to avoid a foreclosure through the Mediation Conference, despite the Mortgagee's good faith efforts, as determined by the Mediation Coordinator.

Assessors Plat 112, Lot 23

Property Address: 84 Merino Street, Providence, RI 02909

17-028693 / PC01

Filed in Providence/Bristol County Superior Court
80 in 6th Division District Court
Submitted: 3/3/2018 4:19:23 PM
Velope: 1448882
Viewer: Shawn
Viewer: Dawn Capobianco

6. The Mediation Coordinator issued a Certificate Authorizing Foreclosure, confirming that all the criteria in R.I. G.L. § 34-27-3.2(h) have been met and the Notice of Mediation Conference was properly served upon the Mortgagor and Owner of the Residential Real Estate.

FURTHER AFFIANT SAYETH NOT.

U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT by its Attorney in Fact, Selene Finance LP

By: _____
Name: Evan Shafer
Title: Team Lead - Foreclosure

*See Power of Attorney recorded herewith.

State of ___Florida___
County of ___Duval___

Subscribed and sworn to before me this 8 day of Aug ust, 2017.

_____
Notary Public: Alton Horton
My commission expires: 4-18-2018

Alton Horton
Commission #FF 152104
Expires AUG 18, 2018
BONDED THRU
1ST FLORIDA NOTARY, LLC

Assessors Plat 112, Lot 23

Property Address: 84 Merino Street, Providence, RI 02909

17-028493 / FC01

Filed in Providence/Bristol County Superior Court
as the 6th Division District Court
Submitted: 5/5/2018 4:19:29 PM
Envelope: 1540662
Reviewer: Sharon C
Reviewer: Dawn Capobianco

**APPENDIX C**
**CERTIFICATE OF COMPLIANCE WITH MEDIATION REQUIREMENT**
**PURSUANT TO R.I. GEN. LAWS § 34-27-3.2**

I, William Martinelli, of Rhode Island Housing, certify as follows:

1. Bank Of America, N.A is the holder of the mortgage given by Henry M Salazar, located at 84 Merino Street, Providence, RI 02909 (the "Mortgage").

2. Henry M Salazar was properly served with the Notice of Mediation Conference pursuant to R.I. Gen. Laws § 34-27-3.2.

3. Rhode Island Housing served as the Mediation Coordinator defined in R.I. Gen. Laws § 34-27-3.2 and Department of Business Regulation Banking Regulation 5 regarding the Mortgagee's potential foreclosure proceedings.

4. Bank Of America, N.A has paid all fees and penalties required under R.I. Gen. Laws § 34-27-3.2 subsections (d)(1) and (f).

5. For the reasons set forth below, the Mortgagee is authorized to proceed with the foreclosure action, including recording of the foreclosure deed [check one box below]:

☑ After two attempts by the Agency to contact the Mortgagor, the Mortgagor failed to respond to the request of the Agency to appear for the Mediation Conference or otherwise participate in the Mediation Conference.
☐ The Mortgagor failed to comply with the requirements of R.I. Gen. Laws § 34-27-3.2.
☐ The parties been unable to reach an agreement to renegotiate the loan in order to avoid a foreclosure through the Mediation Conference, despite the Mortgagee's good faith efforts as noted on Attachment 1.

6. I am authorized by the Agency to issue this Certificate.

William Martinelli
Mediation Coordinator
June 14, 2016

8025892

in In Providence/Bristol County Superior Court
in 6th Division District Court
mitted: 3/23/2016 4:19:23 PM
lope: 1505880
iewer: Sharon S.
iewer: Dawn Capobianco

ATTACHMENT I

Good Faith Determination

The Mortgagee, or its authorized representative, has made a good faith effort to reach agreement with the Mortgagor to renegotiate the terms of the Mortgage in an effort to avoid foreclosure. The Mortgagee's good faith is evidenced by the following factors [check all applicable boxes]:

☑ Mortgagee provided the Notice of Mediation Conference to the Mortgagor as required by R.I. Gen. Laws § 34-27-3.2.

❑ Mortgagee designated an agent authorized to participate in the Mediation Conference on its behalf, and with authority to agree to a Workout Agreement on behalf of Mortgagee.

❑ Mortgagee made reasonable efforts to respond in a timely manner to requests for information from the Mediation Coordinator, Mortgagor, or counselor assisting the Mortgagor.

❑ Mortgagee analyzed and responded to the Workout Agreement submitted by the Mortgagor and/or Mediation Coordinator within fourteen days of the Workout Agreement.

❑ If the Mortgagee declines to accept the Mortgagor's Workout Agreement, the Mortgagee provided written, detailed statement of its reasons for rejecting the proposal within fourteen (14) days.

❑ If the Mortgagee declines to accept the Mortgagor's Workout Agreement, the Mortgagee offered, in writing within fourteen (14) days, to enter into an alternative work-out/disposition resolution proposal that would result in a material net financial benefit to the Mortgagor as compared to the terms of the Mortgage.

❑ Other facts demonstrating Mortgagee's good-faith [please specify]:

_____

_____

_____

_____

_____

Doc No: 00179405
Book: 11807 Page: 147

## AFFIDAVIT

**Property Address: 84 Merino Street**
**Providence, Rhode Island**

**Mortgage:** Henry M. Salazar to Bank of America, N.A., dated May 30, 2007 and recorded with the City of Providence Land Evidence Records in Book 8698, Page 4.

**Foreclosing Mortgagee:** U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT

The undersigned, Susan W. Cody, Esq., having personal knowledge of the facts herein stated, under oath deposes and says as follows:

1. I am an attorney at law duly licensed in the State of Rhode Island and am an attorney of the Law Firm known as Korde & Associates, P.C. (the " Firm") and as such have access to all of the records of the Firm. I have personally reviewed the file and records of the Firm in connection with the Mortgage and its related foreclosure.

2. The Firm was retained by Selene Finance LP as servicer for U.S. Bank National Association, not in its individual capacity, but solely as legal title trustee for BCAT 2016-18TT to conduct a mortgage foreclosure relative to the Mortgage and in connection thereto the Firm prepared and mailed by first class mail and by certified mail return receipt requested notices of default to the Borrower, Henry M. Salazar on April 14, 2017.

3. All notices, requirements and conditions precedent were satisfied in strict compliance with the terms of the mortgage.

Signed under the pains and penalties of perjury this 11th day of August, 2017.

Susan W. Cody, Esq.

## COMMONWEALTH OF MASSACHUSETTS

## COUNTY OF MIDDLESEX

Sworn to (or affirmed) and subscribed before me this 11th day of august, 2017, By Susan W. Cody, Esq.

Notary Public:
My commission expires:

ELLEN M. FITZPATRICK
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
June 8, 2018

[X] Personally Known

[ ] Produced Identification Type of Identification Produced:

RECEIVED:

Providence
Received for Record
Aug 22,2017 at 10:21A
Document Num: 00179405
John A Murphy
Recorder of Deeds