UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF RHODE ISLAND**

**HENRY SALAZAR**

      **VS.**                     **Civil Action No. 18-cv-495**

**SELENE FINANCE, LP,**
**U.S. BANK NATIONAL ASSOCIATION AS**
**LEGAL TITLE TRUSTEE FOR**
**BCAT 2016-18TT, and**
**PEDRO TAVERAS**

## AMENDED COMPLAINT

Plaintiff complains of Defendants as follows:

1.     Plaintiff, Henry Salazar is a resident of Providence, Rhode Island, residing at 84 Merino Street, Providence, Rhode Island.

2.     Plaintiff is the owner of the real property located at 84 Merino Street, Providence, Rhode Island.

3.     Through this action Plaintiffs challenge the lawfulness of the foreclosure sale of the residence of Henry Salazar, which was conducted on July 20, 2017, by certain Defendants: U.S. Bank National Association as Legal Title Trustee for BCAT 2016-18TT ("US Bank") and Selene Finance, LP. a loan servicer ("Selene") acting as an agent of US Bank through its attorney, Korde Law Offices, P.C.("Korde")

4.     Pedro Taveras, a resident of Providence Rhode Island, claims to be the current owner of the Plaintiff's property.

## JURISDICTION AND VENUE

5.     This Court has supplemental jurisdiction over this action and all defendants pursuant to R.I.G.L§34-27-3.2, , 28 U.S.C. § 1367  and the fact that Defendants removed this action.

6.     This Court also has jurisdiction over this case pursuant to the Real Estate Settlement and Procedures Act, 12 U.S.C. §2605.

7.      This Court also has jurisdiction over this case pursuant to the Fair Debt Collection Practices 15 U.S.C. §1692.

8.     This Court also has jurisdiction over this case pursuant to the Truth in Lending Act 15 U.S.C. §1640 and §1641.

9.     The principal events giving rise to the claims stated herein occurred in the State of Rhode Island.

10.    This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. 2201.

11.     The Plaintiff Henry Salazar is a citizen of the United States who resides at 84 Merino Street, Providence, RI 02909 ("Property").

12.    Selene Finance, LP ("Selene") is a loan servicer, with a principal place of business in Houston, Texas.

13.   U.S. Bank, National Association ("US Bank") is a national bank with a principal place of business in Minnesota.

## GENERAL FACTUAL ALLEGATIONS

14.    On or about May 29, 2007, Henry Salazar borrowed $285,000.00 from Bank of America, N.A. ("Originating Lender"), which was evidenced by a promissory note (the "Note") on the same date.

15.     On or about the same date, the Note was secured by a mortgage ("Mortgage") in favor of the Originating Lender.

16.    The Mortgage was recorded on May 30, 2007, in the land records of the City of Providence at Book 8968 at Page 4.

17.    A copy of the mortgage is attached as Exhibit A to the original complaint.

18.     On October 25, 2016, Bank of America, N.A., purported to assign its interest in the Mortgage to U.S. Bank National Association as Title Trustee for BCAT2016-18TT by an assignment recorded December 12, 2016in Book 11585 Page 171   of the land records for the City of Providence.

19.     A copy is attached as Exhibit B of the original complaint.

20.     Bank of America transferred its interest in the Mortgage to the entity which created the Trust known as BCAT2016-18TT by an assignment which is not recorded on or about September 28, 2016.

21.     On or about April 14, 2017, Selene had referred the Plaintiff's Mortgage account to Korde  to exercise the statutory power of sale and foreclose on the Plaintiff's home.

22.     On April 15, 2017, on behalf of the Defendants, Korde deposited into the United States mail a purported Default letter to the Plaintiff. A copy is attached as Exhibit C to the original complaint.

23.     Subsequently on or about May 26, 2017, Korde , claiming to act on behalf of Selene and US Bank sent a Notice of Sale, pursuant to R.I.G.L 34-27-4 ("Notice") to the Plaintiff.

24.     The Notice is attached as Exhibit D to the original complaint.

25.      In the Notice, Korde stated its intention to sell the property described in the Mortgage, on July 20, 2017 at 1:00 PM.

26.     After the purported assignment of mortgage to US Bank and prior to receiving the Notice of Sale, Plaintiff did not receive any correspondence from Selene or US Bank or any entity acting on its behalf advising him of a Mediation Conference as required by and as described in Rhode Island General Laws § 34-27-3.2.

27.     Plaintiff never received a Notice of Mediation from Rhode Island Housing or any other agency regarding mediation for this mortgagee, US Bank.

28.     On or about July 20, 2017, US Bank, through Korde,  conducted a purported foreclosure sale of the Property, in which US Bank purportedly made a bid in the amount of $128,000.00.

29.     On August 8, 2017,US Bank, by Selene as Attorney in Fact, signed a document (hereinafter referred to as "the Foreclosure Deed" without prejudice as to its legal effect), which was recorded on August 22, 2017 in the land records for the City of Providence  at Book 11807 at  Page 130.

30.     The purported Foreclosure Deed is attached as Exhibit E to the original complaint.

31.     US Bank granted Selene a power of attorney, by which it authorized Selene to conduct foreclosure sales and to sign foreclosure deeds and eviction letters and to commence eviction proceedings.

32.     US Bank thus delegated all tasks relating to the purportedly foreclosed premises to Selene, which had hired Korde to carry out its debt collection activity on behalf of US Bank, including eviction of the residents of the premises and obtaining damages for use and occupancy from the Plaintiff and his tenants.

33.     On or about December 28, 2017, Selene authorized hired Korde to send a Notice of Termination of Tenancy to Plaintiff demanding that Plaintiff leave his home on February 1, 2018.

34.     A copy is attached as Exhibit F to the original complaint.

35.     In this Notice of Termination, Selene, through its attorney Korde, asserted that the Plaintiff lived in Unit 1 of the property, which was the first floor.

36.     Selene knew that the Plaintiff lived on the first floor and rented the second floor.

37.     On or about December 28, 2017, Selene authorized hired Korde to send a Notice of Termination of Tenancy to Plaintiff demanding that Plaintiff leave his home on February 1, 2018.

38.     A copy is attached as Exhibit G to the original complaint.

39.     In this Notice of Termination, Selene, through its attorney Korde, asserted that the Plaintiff lived in Unit 2 of the property, which was the second floor.

40.     Subsequently on March 6, 2018, Selene authorized Korde to file a Complaint for Eviction against Plaintiff in  Sixth Division District Court,

Providence County, Rhode Island in case number 6CA-2018-02934 to evict
Plaintiff from his first floor premises and to evict his tenants from the second floor.

41.     A copy of this complaint is attached as Exhibit H to the original complaint.

42.     Subsequently on March 6, 2018, Selene authorized Korde to file a
Complaint for Eviction against Plaintiff in  Sixth Division District Court,
Providence County, Rhode Island in case number 6CA-2018-02952 to evict him
from his first floor premises and to evict his tenants from the second floor.

43.     A copy of this complaint is attached as Exhibit I to the original complaint.

44.     On November 21, 2017, Plaintiff, through his attorney, mailed a Notice of
Error pursuant to the provisions of Regulation X and the Real Estate Settlement
and Procedures Act ("RESPA") to Selene, asserting the following error:

The consumer believes that you have committed an error by seeking to exercise the
statutory power of sale without having sent the consumer a Notice of Mediation.
This mortgage loan was purportedly assigned from Bank of America to US Bank
National Association as legal title trustee for BCAT2016-18TT by an assignment
dated October 25, 2016, attached to this Notice of Error. On May 27, 2017, your
default service provider, The Logs Group, through its attorney, Korde &
Associates mailed the consumer a Notice of Sale.  However you did not comply
with R.I.G.L. 34-27-3.2 since neither you nor US Bank National Association as
legal title trustee for BCAT2016-18TT sent the consumer a Notice of Mediation as
required by this statute.  The Mediation Statute requires that before an owner of the
mortgage loan sends a Notice of Sale, it must first send the consumer a Notice of
Mediation.  This statute states in section (d):

(d) The mortgagee shall, prior to initiation of foreclosure of real estate pursuant to
§ 34-27-4(b), provide to the mortgagor written notice at the address of the real
estate and, if different, at the address designated by the mortgagor by written notice
to the mortgagee as the mortgagor's address for receipt of notices, that the
mortgagee may not foreclose on the mortgaged property without first participating
in a mediation conference. Notice addressed and delivered as provided in this
section shall be effective with respect to the mortgagor and any heir or devisee of
the mortgagor.
In the definition section mortgagee is defined as:
(8) "Mortgagee" means the holder of a mortgage, or its agent or employee,
including a mortgage servicer acting on behalf of a mortgagee.

The purported mediation notice provided in the foreclosure deed referenced a Notice of Mediation sent by a previous mortgagee, Bank of America. However the mediation statute requires that before a mortgagee send a Notice of Sale, that the mortgagee sending the notice must provide the consumer the Mediation Notice.

Thus all foreclosure costs and expenses incurred to the mortgage loan account must be removed from the mortgage loan account and the foreclosure deed must be rescinded without any costs to the consumer's mortgage loan account.

45.   Selene received this Notice of Error on November 24, 2017. A copy is attached as Exhibit 1 to the original complaint.

46.   On November 21, 2017, Plaintiff, through his attorney, mailed a Notice of Error pursuant to the provisions of Regulation X and the Real Estate Settlement and Procedures Act ("RESPA") to Selene, asserting the following error:

The consumer in this case believes that you committed an error by  sending a RIGL 34-27-4 notice and scheduling and advertising a foreclosure by statutory power of sale, when the consumer had not been sent a default notice pursuant to the terms of the mortgage and an acceleration notice pursuant to the terms of the mortgage.  As indicated by the attached record of the United States Postal Service, the purported default letter dated April 14, 2017 was not placed in the United States mail until April 15, 2017 at 12:42 AM by a vendor in the Boston, Massachusetts Distribution center. Thus the consumer was not provided 30 days from the date the letter was deposited into the US mail to cure the default.
In addition this letter was defective because it did not accurately state the amount of the default, which included legal fees and property inspection fees and other inappropriate charges to the mortgage loan account.
This letter was also defective that it did not designate a specific date, but stated that the default had to be cured by May 14, 2016.  The term by means on or before, which is not a specific date as required by the terms of the mortgage.
You also committed error by indicating that the consumer had to contact Korde & Associates to obtain the actual amount past due.
Such notices are condition precedents to the exercise of the statutory power of sale. As a result, all charges for this illegal foreclosure should be removed from the consumer's mortgage loan account.

47.   Selene received this Notice of Error, attached as Exhibit J to the original complaint on November 24, 2018.

48.     Selene was aware of the invalidity of the foreclosure on November 24, 2018 due to the defective default notice and due to the failure of the mortgagee seeking to exercise the statutory power of sale sending the Plaintiff a Notice of Mediation as required by law.

49.     Instead Selene disputed the Notice of Error and decided to commence evictions of two units of the Plaintiff's property.

50.     Subsequently, Selene recognized the problem with the foreclosure due to the lack of a valid default letter and the failure of Selene on behalf of the new mortgagee to provide the Plaintiff mediation as required by R.I.G.L 34-27-3.2.

51.     Selene had already filed two cases for eviction against the Plaintiff and his tenants.

52.     However it merely wanted to obtain more funds from a third party who would not be aware of the defective nature of the foreclosure.

53.     Selene, in January 2018, then filed with the Internal Revenue an Internal Revenue Service Form 1099-C cancellation of Debt in the amount of $148,147.56 and also sent this to the Plaintiff's attorney.  A copy is attached as Exhibit K to the original complaint.

54.     Selene made a determination that the best resolution of this title problem was to sell the property to a third party cheaply and as quickly as possible.

55.      It then dismissed both eviction actions.

56.     Selene then listed the property for sale on Auctions.com, a website which offers properties for sale to buyers online.

57.     Selene solicited a bid from a person named Pedro Taveras, who offered $186,600.00 to purchase the property.

58.      It accepted this bid and made the decision to sell the property.

59.     In the 1099C filed with the Internal Revenue Service, Selene had listed the fair market value of the property as $155,000.00.

60.    Selene had executed a foreclosure deed conveying the property to US Bank for $128,000.00.

61.    When Selene conveyed the property on US Bank, it conveyed the property by a Special Warranty Deed, attached to the original complaint as Exhibit K-1.

62.    A Special Warranty Deed from Selene on behalf of US Bank was executed on April 26, 2018.

63.    This deed only conveyed whatever interest US Bank owned after the defective foreclosure sale.

64.    After this deed was recorded, Defendant Pedro Taveras sought to enter Plaintiff's property without his consent.

65.    Defendant, Pedro Taveras threatened the Plaintiff and his family if they did not pay rent.

66.    Defendant, Pedro Taveras, also threatened the Plaintiff's tenants on the second floor if they did not pay rent to him.

67.    Defendant Pedro Taveras mailed the Plaintiff a Notice of Termination of Tenancy on May 18, 2018.

68.    Defendant, Pedro Taveras, through his attorney, filed a complaint for Eviction against the Plaintiff on June 4, 2018.

69.    The Plaintiff lives in the property with his wife and three minor children.

70.    If the title to the Plaintiff's property is not quieted, Plaintiff will suffer irreparable harm, in that the Plaintiff, will lose possession of his primary residence and due to the fact that he has no other place to reside.

## COUNT II BREACH OF CONTRACT AND BREACH OF GOOD FAITH AND DEALING

71.    Paragraphs 1-70 are incorporated by reference.

72.    Neither Korde, Selene or U.S. Bank have mailed the Plaintiff a notice in the form required pursuant to the provisions of paragraph 22 of the mortgage.

73.     Defendants and their attorneys were aware of the  case of *Martins v. FHFA et al*, decided by this Court.

74.     Based on this opinion and their familiarity with the terms of the mortgage, they  were aware of the need for strict compliance with the terms of the mortgage before attempting to exercise the statutory power of sale.

75.     *Martins* had been decided on October 11, 2016 and had an impact on titles to properties which purported to have been deeded to Selene's clients, such as US Bank.

76.     Thus US Bank, through its servicer and attorney, was aware that a proper default notice was needed prior to acceleration and the exercise of the statutory power of sale.

77.     US Bank knew that failure to strictly comply with the mortgage would result in a defective foreclosure sale.

78.     Us Bank was aware that before an acceleration of the loan was declared, the Lender was required to send Plaintiff a notice to his home address which specified:

> a.     the default;
>
> b.     the action required to cure the default, stating a date, not less than 30 days from the date the notice was deposited in the United States mail that the default must be cured;
>
> c.     that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of our home
>
> d.     the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

79.     Paragraph 22 of Plaintiff's mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless**

9

**Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

80.     The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

81.     There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

82.     Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

83.     Korde on behalf of Selene, on April 15, 2017, deposited into the United States a purported default letter which was dated April 14, 2017.

84.     The records of the United States Postal Service indicate that the purported default letter was deposited in the  United States Postal Service Regional Facility in Boston , Massachusetts on April 15, 2017 at 12:42 AM.

85.     The law office of Korde is located in Lowell, Massachusetts.

86.     Korde hired a third party vendor to deliver this letter to the United States Post Office in Boston.

87.     However this letter was not deposited into the mail on April 14, 2017.

88.     This letter did not comply with Paragraph 22 of the mortgage.

89.     It did not state a specific and unequivocal date to cure the mortgage loan, which was at least thirty days from the date that the letter was deposited in the United States mail.

90.     This letter stated that:

DEMAND   is hereby made against you to cure this default by May 14, 2017.

91.     May 14, 2017 was twenty nine days after April 15, 2017, not thirty days

92.     Paragraph  15 of the mortgage states:

Any notice to  Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower  when mailed by first class mail  when actually delivered to Borrower's notice address if sent by other means.

93.     Neither Selene, US Bank, Korde or any person or entity deposited this letter into the United States mail by first class letter mail addressed to the Plaintiff on April 14, 2017.

94.     Korde's use of certified mail return receipt requested for the purported default letter rendered void any notices to the Plaintiff.

95.     By using certified mail return receipt requested instead of regular first class provided that the notice was deemed to have been given to the Plaintiff when actually delivered.

97.     Sending a default notice by certified mail return receipt request imposed an additional condition on the recipient of the letter, namely for him to be home to sign for the letter.

98.     This additional condition to sign for a letter did not strictly comply with paragraph 15 or 22 of the mortgage.

99.     As a result, pursuant to the terms of the mortgage, the letter mailed by certified mail was not deemed to have been given to the Plaintiff on the day that it was deposited into the United States mail.

100.    Instead pursuant to paragraph 15 of the mortgage, this certified mail letter had to be actually delivered to the Plaintiff in order to be effectively delivered.

101.    This certified letter was not actually received by the Plaintiff.

102.    A notice to pick up the certified letter was left at his mailbox on April 17, 2017 at 2:57 PM.

103.    Thus a default letter was not mailed pursuant to the terms of the mortgage and was not given to the Plaintiff.

104.    US Bank did not strictly comply with the terms of the mortgage, thus invalidating the purported foreclosure sale.

105.    This letter did not state a specific date. Instead it indicated that the default had to be cured by May 14, 2017.

106.    Under Rhode Island law, the phrase by is defined as "on or before".

107.    The Rhode Island Supreme Court in the case of *In re Review of Proposed Town of New Shoreham Project*, 25 A.3d 482 (R.I., 2011) has interpreted the phrase by to mean "on or before a certain date".

108.    The use of the phrase "by May 14, 2017" in this purported default letter demanded that the Plaintiff cure the default at any time from April 14, 2017 to May 14, 2017, which included dates within thirty days of the date of the letter.

109.    The mortgage in paragraph 22(c) specifically states that a specific date must be provided, not a date on or before.

12

110.   As a result there was no strict compliance with the terms of the mortgage due to the fact that  the letter,  deceptively and not in strict compliance with the terms of the mortgage, falsely stated that the consumer was required to cure the default within thirty days of the date of the letter, which was not in strict compliance with the terms of the mortgage.

111.   The letter  deceptively indicated to the Plaintiff  that an nonspecific amount to cure the default must be received in certified funds.

112.   The mortgage did not permit the loan servicer or lender to require that the Plaintiff was required to pay any arrearage by certified fund.

113.   The only provisions of the mortgage which permitted the loan servicer or the lender to require payment by certified funds was paragraph 1.

114.   Paragraph 1 of the mortgage stated:

In the event that any check or other instrument was returned  to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:
(a) cash;(b) money order;(c) certified check, bank check, treasurer's check, provided any such check is drawn upon and institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

115.   Plaintiff never provided any lender or mortgagee or loan servicer a check with insufficient funds to pay the mortgage, which was returned unpaid.

116.   Plaintiff was never advised by any lender or mortgagee or loan servicer that a check had been returned for nonpayment and that as a result all payments had to be paid by (a) cash;(b) money order;(c) certified check, bank check, treasurer's check, provided any such check is drawn upon and institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

117.   Despite the fact that Plaintiff never provided a payment check with insufficient funds, which was returned unpaid, the letter deceptively advised Plaintiff  that the only way to cure the purported default was by certified funds.

118.   This letter deceptively and falsely imposed an additional condition on the requirements to cure any arrearage, namely payment by certified funds to pay to Selene.

119.   This additional deceptive and falsely stated condition,   did not strictly comply with the terms of the mortgage.

120.   In fact, no language in the terms of the mortgage required payment of the arrearage by certified funds

121.   For this additional reason, this letter did not strictly comply with the terms of the mortgage.

122.   This letter did not specify a specific and accurate amount which had to be cured on a particular date.

122.   The amount stated as $31,144.62 was not an accurate amount of the purported default.

123.   In fact the letter on its face indicates that this amount was not accurate and that the Plaintiff could not rely on this number to cure the default. It stated:

In order to cure this default you must pay the total amount of $31,144.62 in addition to other amounts that become due from the date of this letter through the date that you pay.
Please contact this office to  request the full amount owed on your account as the amount due on the day you pay may be greater than the amount stated above, due to interest, late charges and other charges or credits that may vary from day to day, or may be assessed after the date of this letter.

124.   The language of the mortgage does not provide that the mortgagor was required to contact any party to obtain the amount necessary to cure the default.

125.   Paragraph 22 provided that the Plaintiff had to be provided a  specific and accurate amount required to cure the mortgage

126.   The letter did not demand  a specific amount to cure the mortgage.

127.   The reference to $31,144.62 was not a specific amount necessary to cure this default.

14

128.   Instead the letter required the Plaintiff to contact Korde for the exact amount to cure.

129.   No language in the mortgage required the mortgagor to contact the law firm for the loan servicer to obtain an accurate reinstatement amount.

130.   Paragraph 22 required as a condition to acceleration and exercise of the statutory power of sale that the Plaintiff be provided a specific amount to cure an arrearage.

132.   Paragraph 22 required as a condition to acceleration and exercise of the statutory power of sale that the Plaintiff be provided  specific date at least 30 days from the date that notice was given to the him to cure an accurate and specified arrearage.

133.   There was no language in the mortgage which authorized the note holder to accelerate the mortgage loan other than based on the failure of the mortgagee to pay the specific amount designated in the default letter on a date at least thirty days after the default letter was given to the Plaintiff.

134.   Paragraph 22 of the mortgage did not permit that the amount necessary to cure to include unspecified additional amounts and day to day unspecified amounts.

135.   For this reasons, the letter did not strictly comply with the terms of the mortgage because it did not specify an exact amount to be cured.

136.   The contractual language in the mortgage required thirty days to cure after notice was properly given to cure the amount in default.

137.   The deceptive inclusion of additional unspecified and indeterminate amounts did not provide the Plaintiff the thirty days required to cure these amounts   under the terms of the mortgage.

138.   The reasonable expectation of the Plaintiff in relation to the mortgage document was that he was entitled to a default letter pursuant to the terms of the mortgage, which would declare a certain amount in default and that he be provided at least thirty days to cure this specific amount.

139.   The additional deceptive language, which created the obligation to pay additional amounts determined by Korde in its letter did not comply with the terms of the mortgage at all.

140.    The additional deceptive language, which created the obligation to pay additional amounts determined by Korde in its letter did not strictly  comply with the terms of the mortgage.

141.   Korde's inclusion of deceptive terms not permitted by the terms of the mortgage in a default letter rendered this letter invalid.

142.   As a result the Defendant was not authorized to accelerate the mortgage loan and was not authorized to exercise the statutory power of sale.

143.   In this letter, Selene deceptively stated that the arrearage  included an inaccurate amount, which is claimed was $31,144,62 ("This portion"), which  was not an accurate amount actually past due pursuant to the terms of the mortgage.

144.   This portion  included multiple unreasonable and unnecessary charges, which were charged by Selene Finance to the mortgage loan account contrary to the terms of the mortgage.

145.   This portion included unidentified statutory expenses of $150.00 on November 30, 2016.

146.   This unidentified expense was neither documented by Selene and was neither reasonable nor necessary and was not actually paid by the loan servicer.

147.   No statutory expenses were incurred on this date or at any time prior to November 30, 2016 by Selene.

148.   This  charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

149.   This portion also included a Misc. Corporate Disbursement of $1.00 on November 1, 2016.

150.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

151.   This charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

152.   This portion, also included an Unspecified Corp Advance Adjustment of $90.00 on November 9, 2016.

153.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

154.   This  charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

155.    This portion also included an Unspecified Misc. Corporate Disbursement of $.42 on December 13, 2016.

156.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

157.   This  charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

158.   This portion,  also included an Unspecified Misc. Corporate Disbursement of $.47 on December 13, 2016.

159.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

160.   This  charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

161.   This portion, included an Unspecified Misc. Corporate Disbursement of $.30 on December 15, 2016.

162.   This charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

163.   This  charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

164.   This portion included  property inspection fees referenced as Unspecified Misc. F/C and B/R Expenses of $12.00 on December 21, 2016, $12.00 on January 19, 2017, $12.00 on February 24, 2017 and  $12.00  on March 21, 2017.

165.   These charges were not permitted by the terms of the mortgage and were neither reasonable nor necessary and were not actually paid by the loan servicer.

166.   The electronic system of record of Selene is a system called Black Knight, formerly called MSP.

167.   This system automatically scheduled and billed the Plaintiff's  mortgage loan account for property inspections.

168.   Third party servicers provided  this purported service by hiring independent contractors to drive by the Plaintiff's home and to take pictures of the house.

169.   These independent contractors work for third parties and do not receive $12.00 for their time spent.

170.   Selene knew that the Plaintiff was living at his home and that the property was not empty at the time that these purported property inspections were ordered.

171.   There was no input from any mortgage servicer technician or any employee of Bank of America or Selene in determining the reason for these property inspections.

171.   The terms of the mortgage permit reasonable property inspection fees to be incurred to verify that the property is not vacant and was being maintained as required by the terms of the mortgage.

172.   The mortgage did not permit automatic charging of property inspection fees.

173.   These fees, which were not permitted by the terms of the mortgage on a monthly basis, were neither reasonable nor necessary and were not actually paid by the loan servicer in that amount.

174.   The purpose of the regular property inspection fees for Selene was is to bill the Plaintiff's mortgage loan account for unreasonable and unnecessary charges in an amount greater than the amount actually paid to the vendor which hired independent contractors to drive by houses.

175.   Each property inspection fee was generated on the Plaintiff's mortgage loan account in the same manner as all loans which are in arrears.

176.   The electronic system of record for the Plaintiff's mortgage loan account with Selene automatically ordered a property inspection fee from a vendor which hired an independent contractor to schedule drive by visits to multiple properties.

177.   This automatic ordering of property inspections occurs for all mortgage loan accounts, which Selene services,  whenever a mortgagor has missed a payment, including the Plaintiff's property.

178.   These automatic monthly charges contrary to the terms of the mortgage charges  should not have been included in the $31,144.62, thus rendering that amount inaccurate.

179.   This portion  also included twenty separate property inspection fees charged by the prior loan servicer, Bank of America,  totaling $300.00 from January 18, 2011.

180.   The validity of these Bank of America fees was not confirmed or verified when Selene Finance commenced servicing of the mortgage loan.

181.   Selene merely accepted the last periodic statement of Bank of America and did not verify whether any charges to the mortgage loan account were accurate or correct.

182.   The computer systems of  Bank of America automatically ordered property inspections any time Plaintiff's mortgage was in arrears.

183.   There was no input from any mortgage servicer technician or any employee of Bank Of America in determining the reason for these property inspections.

184.   The terms of the mortgage permit reasonable property inspection fees to be incurred to verify that the property is not vacant and was being maintained as required by the terms of the mortgage.

185.   The mortgage did not permit automatic charging of property inspection fees.

185.   These fees, which were not permitted by the terms of the mortgage on a monthly basis, were neither reasonable nor necessary and were not actually paid by the loan servicer in that amount.

186.   The purpose of the regular property inspection fees for Bank of America was is to bill the Plaintiff's mortgage loan account for unreasonable and unnecessary charges in an amount greater than the amount actually paid to the vendor which hired independent contractors to drive by houses.

187.   Each property inspection fee was generated on the Plaintiff's mortgage loan account in the same manner as all loans which are in arrears.

188.   The electronic system of record for the Plaintiff's mortgage loan account with Bank of America automatically ordered a property inspection fee from a vendor which hired an independent contractor to drive by multiple properties, as to which the mortgagor has missed a payment, including the Plaintiff's property.

189.   This portion also included multiple foreclosure related charges from Bank of America, which were charged to the mortgage loan account by Selene when it commenced servicing.

190.   These charges were not properly charged to the Plaintiff's mortgage loan account because he had not been mailed a default notice by Bank of America in a form consistent with the terms of the mortgage.

191.   As a result, Plaintiff did not incur any foreclosure charges from Bank of America which could be charged to the mortgage loan account, because it could not exercise the statutory power of sale, without a valid default letter, pursuant to the terms of the mortgage.

192.   These improper charges which should not have been included in the portion were a title fee of $350.00 on August 26, 2010 and an attorney/trustee fee of $720.00 on August 26, 2010.

193.   These fees were neither reasonable nor necessary pursuant to the terms of the mortgage.

194.   The fee of $350.00 is an unreasonable fee for a title search performed by a lawyer on Plaintiff's property.

195.   In this matter, the mortgagee received   a title policy effective May 30, 2007 when the mortgage was originally recorded.

196.   Providence Land Records can be only searched online as no paper records have been maintained since 2004.

197.   At the Providence Land Records, documents are recorded and scanned and returned to the party recording the document.

198.   Thus all searches are conducted on the computer at the City Hall or online at the website of the City of Providence Recorder of Deeds.

199.   The only obligation of the title searcher in this matter would be to go online and check the index and the documents recorded from the date of the mortgage forward.

200.   The Providence Recorder of Deeds Website allows the person accessing the website to print documents at $1.50 per page.

200.   As a result the maximum reasonable amount charged by a Rhode Island attorney for a title search of the Plaintiff's property on August 26, 2010 was $150.00 or less.

201.   If this search had been performed by a non attorney, the amount of a reasonable charge should have been no more than $100.00.

202.   Attorneys in Rhode Island regularly do not charge more than $150.00 for such a search.

203.   However the title search was not performed by an attorney, rendering this charge even more unreasonable for the holder of the first mortgage on the property.

204.   There was no basis for the $720.00 attorney/trustee fee charged by Bank of America, N.A. since there was no trustee involved with the Plaintiff and no default letter had been mailed to the Plaintiff consistent with the terms of the mortgage.

205.   When Selene commenced servicing it did not verify the validity of these charges and merely adopted them into their own system of record.

206.   This portion also included an Unspecified Misc. Corporate Disbursement of $13.88 on January 25, 2017.

207.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

208.   This charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

209.   This portion also included an Unspecified Misc. Corporate Disbursement of $.42 on January 25, 2017.

210.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

211.   This charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

212.   This portion also included an Unspecified Statutory Expenses of $25.00 on February 8, 2017.

213.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

214.   This charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

215.   This portion also included an Unspecified Misc. Corporate Disbursement of $2.00 on February 22, 2017

216.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

217.   This charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

218.   This portion also included an Unspecified Statutory Expenses of $325.00 on February  28, 2017.

219.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

220.   This charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

221.   This portion also included an Unspecified Misc. F/C, B/R Expenses of $15.50  on March 1, 2017.

222.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

223.   This charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

224.   This portion also included an Unspecified Misc. F/C, B/R Expenses of $15.50  on March 1, 2017.

226.   This unidentified charge was not permitted by the terms of the mortgage and was neither reasonable nor necessary and was not actually paid by the loan servicer.

227.   This charge should not have been included in the $31,144.62, thus rendering that amount inaccurate.

228.   Since the amount of the alleged arrearage was not accurate, the demand for the transmittal of an inaccurate amount to cure did not strictly comply with the terms of the mortgage.

229.   The mortgage clearly states that the mortgagee must be provided the amount of the default.

230.   The letter deceptively provided the wrong amount of the default for the reasons alleged in this complaint.

231.   The Plaintiff was entitled pursuant to the terms of the mortgage to be provided the exact amount of the arrearage and to be given thirty days to cure the amount of the exact arrearage.

232.  In order to exercise the statutory power of sale, the lender or its assignee was required to provide the Plaintiff and accurate amount of the default and then wait thirty days after providing this accurate amount, as required by the mortgage before accelerating the mortgage loan and exercising the statutory power of sale.

233.   The deceptive amount stated and the failure to provide an accurate arrearage to be cured in the letter did not strictly comply with the terms of the mortgage, which required an exact amount in order to accelerate and exercise the statutory power of sale.

234.   The letter also deceptively stated that Korde had been hired by Selene to commence foreclosure proceedings.

235.   The use of the term "foreclosure proceedings" deceptively stated that a lawsuit would be commenced if the default were not cured.

236.   The exercise of the statutory power of sale is not a proceeding, which is limited to legal actions filed in Court against a person or entity.

237.   This deceptive letter thus indicated to the Plaintiff that a Judicial Foreclosure would proceed did not strictly comply with the terms of the mortgage.

238.   The letter advised the Plaintiff that he had a right to reinstate after acceleration.

239.   As indicated above, it deceptively advised him how to reinstate the loan by contacting Korde and to make a payment by certified mail.

230.   However when this information was given, the letter deceptively did not advise him that the right to reinstate the mortgage loan would expire five days before the sale date.

231.   The deceptive nature of this letter by not advising the Plaintiff of the limitations on the right to reinstate did not strictly comply with the terms of the mortgage and as a result was defective, which precluded the exercise of the statutory power of sale.

232.   The mortgage was drafted by Bank of America, N.A., the originator of the mortgage loan, with no input from the Plaintiff as to its terms.

233.   Any ambiguities regarding any obligations and rights under the terms of the mortgage thus must be strictly construed against the drafter, Bank of America, N.A. and its successors and assigns.

234.    The terms of the mortgage authorized the exercise of the statutory power of sale, which could only be exercised by the mortgagee, which sought to foreclose sending the consumer a Notice of Sale, pursuant to the provisions of R.I.G.L. 34-27-4.

235.   However no mediation notice was mailed to the Plaintiff by Korde, Selene or US Bank as required by R.I.G.L 34-27-3.2.

236.   Plaintiff's mortgage loan was not in default in May, 2013 and as a result R.I.G.L 34-27-3.2. required that such a Notice of Mediation be mailed by Selene or US Bank prior to it mailing a Notice of Sale.

237.   No such notice was sent, thus precluding the Defendant from exercising the statutory power of sale.

238.   This purported foreclosure sale and deceptive notices mailed to the Plaintiff thus constituted a breach of contract, for which US Bank is liable.

239.   The failure of US Bank to comply with the terms of the mortgage rendered void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to exercise the statutory power of sale.

240.   The statutory power of sale could only be exercised pursuant to the Plaintiff being sent an accurate default letter pursuant to the terms of the mortgage, followed by an acceleration letter, a Mediation Notice followed by a Certificate from Rhode Island Housing certifying that mediation notices were not responded to and a Notice of Sale pursuant to R.I.G.L.34-27-4.

241.   Due to this failure to comply with the terms of the mortgage, U.S. Bank was not contractually authorized to exercise the statutory power of sale and schedule a foreclosure sale on the Plaintiff's property at any time.

242.   Each periodic statement mailed to the Plaintiff by Selene was inaccurate, due to the improper fees charged to the mortgage loan account by Bank of America as adopted by Selene and by Selene.

243.   This mortgage contract contained a covenant of good faith and dealing.

244.   US Bank breach this covenant by its actions.

245.   The actions of US Bank were willful, wanton and reckless warranting the imposition of punitive damages.

246.   The actions of the Defendants constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

247.   Plaintiff's mortgage loan account has been charged unreasonable fees and expenses for the prior foreclosure attempt as alleged in this complaint and for this attempt to foreclose as alleged in this complaint.

248.   Plaintiff has suffered emotional damages for embarrassment and humiliation by the advertising of an improper foreclosure of his home and an eviction action by a purported purchaser.

249.   He has incurred legal fees for the defense of the  eviction action.

250.   He has incurred loss of rental income due to the actions of US Bank.

251.   His credit score has decreased due to the improper foreclosure.

252.   As a result his opportunities to obtain credit at reasonable terms have been diminished due to the scar of an illegal foreclosure on his credit report.

253.   Plaintiff has been unable to obtain a mortgage loan due to bad credit due to the improper foreclosure.

254.   Plaintiff has been worried and distressed that his children will be homeless due to the improper foreclosure.

255.   He has lost sleep and has been nervous and agitated due to the illegal foreclosure worrying about the future and where he will live.

256.   Due to the improper foreclosure Plaintiff has incurred moving costs and expenses to move out of the house, which  he would not have incurred without this improper foreclosure.

257.    Plaintiff has incurred legal fees for the prosecution of this action and has incurred fees for defense of the eviction actions in the Rhode Island 6th Division Court.

258.   The fair market value of the Plaintiff's home is currently $246,000.00. Due to the improper foreclosure and the inadequate price paid by US Bank in the foreclosure deed and the cancellation of debt notice sent to the Internal Revenue Service, Plaintiff faces tax liability.

259.    He will incur the cost to hire an accountant to remedy this situation with the Internal Revenue Service.

260.   This liability with the Internal Revenue Service was caused by  this improper foreclosure.

261.   The actions of US Bank were willful, wanton and reckless warranting the imposition of punitive damages.


WHEREFORE, Plaintiff demands the following relief:

   a.     Damages against US Bank for failure to comply with the terms of the mortgage.

   b.     Damages against US Bank for legal fees and actual damages arising from the breach of contract.

   c.     Damages against US Bank for charging the Plaintiff fees and costs charged to the mortgage loan account arising from the purported foreclosure attempt.

   d.     Punitive damages against US Bank.

    e.     Legal fees from US Bank  pursuant to the provisions of  R.I.G.L § 9-1-45.

    f.     All other just and proper relief.

                       HENRY SALAZAR
                       By his Attorney

September 6, 2019           /s/ John B. Ennis
                       JOHN B. ENNIS, ESQ. #2135
                       1200 Reservoir Avenue
                       Cranston, Rhode Island 02920
                       (401) 943-9230
                       Jbelaw75@gmail.com

## COUNT II – VIOLATION OF THE PROVISIONS OF  RHODE ISLAND GENERAL LAWS § 34-27-3.2

262.   Paragraphs 1-261 are incorporated by reference.

263.   Rhode Island General Laws § 34-27-3.2 requires a mortgagee, or its servicing agent, to obtain a certificate of compliance before sending a notice of foreclosure sale under § 34-27-4 (b). See § 34-27-3.2 (d) (P.L. 2013, ch. 325.

264.   The mortgagee obtains a certificate of compliance from the mediation coordinator at Rhode Island Housing either by sending a required notice of a mediation conference to a mortgagor and not receiving a response from the mortgagor; See § 34-27-3.2 (h); or by participating in a mediation conference in good faith; See § 34-27-3.2 (i).

265.   Neither Selene nor US Bank complied with § 34-27-3.2 before sending the Notice of Mortgage Foreclosure Sale pursuant to § 34-27-4 (b).

266.   Neither US Bank nor Selene sent to the Plaintiff the required notice of mediation conference to the Plaintiffs, and did not participate in a mediation conference with Rhode Island Housing in good faith.

267.   The purported foreclosure deed contains a certificate dated June14, 2016 when Bank of America was the mortgagee.

268.   However once US Bank became the mortgagee on September 28, 2016, it was obliged under the mediation statute to send the Plaintiff a Notice of Mediation before sending a Notice of Sale.

269.    Pursuant to 34-27-3.2 (n), because US Bank  and Selene on behalf of US Bank failed to comply with § 34-27-3.2, the purported foreclosure sale that occurred on July 20, 2017, was void, "without limitation of the right of the mortgagee thereafter to re-exercise its power of sale or other means of foreclosure upon compliance with this section."

 270.  Plaintiff has filed this action within one year of the first notice of advertising of the notice of sale.

271.   Notice of this action was provided to the attorney for the Defendant, US Bank when the action was filed. Such notice under Rhode Island law constitutes service.

272.    Plaintiff has incurred damages as a result of the actions of Selene and US Bank for failure to comply with the Mediation Statute as alleged in this complaint.

273.   He has incurred emotional distress due to the actions of Selene and US Bank, which caused the improper foreclosure.

274.   As a result of Defendants' actions he has been worried that he and his family will be evicted and will lose his home and has actually incurred moving costs and expenses to move out of his home.

275.   He has lost income in rent not paid by his tenants due to this wrongful foreclosure without mediation.

276.   He has been charged improper charges costs to his mortgage loan account, which include foreclosure costs, legal fees, recording fees, certified mail costs and other costs, which he owes after the foreclosure if the foreclosure is rescinded. These improper charges are referenced in Count I of this complaint, which is incorporated by reference to this Count.

277.   These charges were neither reasonable nor necessary.

278.   These charges to the mortgage loan account were not actually paid to the vendors or law firms which sent bills for these costs, but were nevertheless billed to the Plaintiff's mortgage loan account.

279.   His credit score has decreased due to the improper foreclosure.

280.   As a result his opportunities to obtain credit at reasonable terms have been diminished due to the scar of an illegal foreclosure on his credit report.

281.   Plaintiff has been unable to obtain a mortgage loan due to bad credit due to the improper foreclosure.

282.   Plaintiff has been worried that his children will be homeless due to the improper foreclosure. He has lost sleep and has been nervous and agitated due to the illegal foreclosure worrying about the future and where he will live.

283.   Due to the improper foreclosure Plaintiff will incur moving costs and expenses that he would not have incurred without this improper foreclosure.

284.   Plaintiff has incurred legal fees for the prosecution of this action and has incurred fees for defense of the eviction action in the Rhode Island 6th Division Court.

285.   The fair market value of the Plaintiff's home is currently $266,900.00. Due to the improper foreclosure and the inadequate price paid by US Bank in the foreclosure deed and the cancellation of debt notice sent to the Internal Revenue Service, Plaintiff faces tax liability.

286.   He will incur the cost to hire an accountant to remedy this situation with the Internal Revenue Service.

287.   This tax problem was caused by the improper foreclosure.


Wherefore Plaintiff demands the following relief:

  A. A declaration that the foreclosure sale of the Plaintiff's Property on July 20, 2017, was invalid and void;

B.  A declaration that the foreclosure deed recorded on July 20, 2017 in the land records for the City of Providence at Book 11807 Page 128, is invalid and void;

C.  Actual and compensatory damages and legal fees and costs.

D.  Grant all other just and proper relief

HENRY SALAZAR
By his Attorney

September 6, 2019                    /s/ John B. Ennis_____
                                     JOHN B. ENNIS, ESQ. #2135
                                     1200 Reservoir Avenue
                                     Cranston, Rhode Island 02920
                                     (401) 943-9230
                                     Jbelaw75@gmail.com

## COUNT III

## VIOLATION OF R.I.G.L 19-14.11-4

288.   The allegations of paragraphs 1-287 are incorporated by reference.

289.   Selene is  a third party loan servicer subject to the provisions of R.I.G.L. 19-14.11-4.

290.   This statute prohibits third party loan servicers from certain actions. This statute prohibits the following actions:

## § 19-14.11-4. Prohibited acts and practices.

It is a violation of this chapter for a person to:

(1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person.

(2) Engage in any unfair or deceptive practice toward any person.

(3) Obtain property by fraud or misrepresentation.

(4) Use any unfair or unconscionable means in servicing a loan.

(5) Knowingly misapply or recklessly apply loan payments to the outstanding balance of a loan.

(6) Knowingly misapply or recklessly apply payments to escrow accounts.

(7) Require the unnecessary forced placement of insurance when adequate insurance is currently in place.

(8) Fail to provide loan payoff information within the time period set forth in chapter 19.

(9) Charge excessive or unreasonable fees to provide loan payoff information.

(10) Fail to manage and maintain escrow accounts in accordance with § 19-9-2.

(11) Knowingly or recklessly provide inaccurate information to a credit bureau, thereby harming a consumer's credit worthiness.

(12) Fail to report both the favorable and unfavorable payment history of the consumer to a nationally recognized consumer credit bureau at least annually if the servicer regularly reports information to a credit bureau.

(13) Collect private mortgage insurance beyond the date for which private mortgage insurance is required.

(14) Knowingly or recklessly facilitate the illegal foreclosure of real property collateral.

(15) Knowingly or recklessly facilitate the illegal repossession of chattel collateral.

(16) Fail to respond to consumer complaints in a timely manner.

(17) Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist, or aid and abet, any person in the conduct of business under this chapter without a valid license as required under this chapter.

(18) Fail to comply with any federal or state law, rule, or other legally binding authority relating to the evaluation of loans for modification purposes or the modification of loans.

(19) Fail to comply with this chapter, or rules adopted under this chapter, or fail to comply with any orders or directives from the director, or fail to comply with any other state or federal law, including the regulations thereunder, applicable to any business authorized or conducted under this chapter.

291.   By its attempted exercise of the statutory power of sale as alleged, Selene as alleged above has violated the following provisions of this statute:

(2) Engage in any unfair or deceptive practice toward any person.

(3) Obtain property by fraud or misrepresentation.

(4) Use any unfair or unconscionable means in servicing a loan.

(14) Knowingly or recklessly facilitate the illegal foreclosure of real property collateral.

292.   The conduct of Selene violates the provisions of this statute and are deemed by the State of Rhode Island to be illegal acts, which are prohibited the State of Rhode Island.

293.   These actions are unfair and deceptive and prohibited by law.

294.   Plaintiff has alleged actual damages arising from the conduct of Selene in this complaint.

Wherefore Plaintiff demands judgment for actual damages, punitive

damages and legal fees  for the actions of SELENE which violated the provisions

of R.I.G.L 19-14.11-4 and to grant all other just and proper relief.

HENRY SALAZAR
By his Attorney

September 6, 2019
/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT IV

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY SELENE BY THREATENING TO SCHEDULE A FORECLOSURE SALE IN VIOLATION OF 1692e(5) and 1692f(6) OF THE FDCPA**

295.   Paragraphs 1- 294 are incorporated by reference.

296.   Selene is debt collector as defined by 15 USC 1692 et seq.

297.   The primary business of Selene is the collection of debts.

298.   Selene collects payments for owners of mortgages.

299.   The only business of Selene is the collecting of debts for owners of mortgages.

300.   Selene primary business is not the enforcement of security interests.

301.   At the time that Selene commenced servicing of the Plaintiff's mortgage loan, the Plaintiff was in arrears.

302.   At the time that Selene commenced servicing on November 1, 2019, the Plaintiff's mortgage loan was due to February 1, 2016.

303.   Since June 25, 2017 Selene has committed a violation of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

304.   Selene has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

305.   Selene, through its attorney, threatened to commence a non-judicial foreclosure to effect dispossession of the Plaintiff  of  his property even through US Bank and Selene had  no present right to possession of the property claimed as collateral through an enforceable security interest.

306.   As alleged above, Selene mailed the Plaintiff a Notice of Sale in an attempt to collect a debt despite the fact that it had not mailed the Plaintiff a default letter which was compliant with the terms of the mortgage.

307.   As alleged above, Selene mailed the Plaintiff a Notice of Sale despite the fact that it had not mailed the Plaintiff a mediation notice pursuant to R.I.G.L. 34-27-3.2.

306.   This action was a violation of the provisions of 1692f(6) of the FDCPA.

307.   This action was also a violation of the provisions of 1692e(5) of the FDCPA by making a threat to taken an action which could not be legally taken.

308.   The facts alleged in this complaint establish that US Bank did not have the present right to possession of the property claimed as collateral through an enforceable security interest.

309.   As alleged above, Selene violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take.

310.   It advised the consumer, that a sale would occur on June 28, 2017 despite the fact that no mediation notice had been sent by US Bank or Selene acting on its behalf and that a defective default letter had been sent to the Plaintiff.

311.    All the actions of Selene alleged in this complaint were designed to compel the Plaintiff to pay monies to US Bank and Selene on behalf of US Bank  as alleged owner of the note and mortgage under the false threat of foreclosure of his home unless he made such a payment to Selene, through Korde on behalf of US Bank.

312.   The Plaintiff has incurred actual damages as a result of the conduct of Selene.

313.    Plaintiff has incurred damages as a result of the actions of Selene and US Bank for failure to comply with the Mediation Statute as alleged in this complaint.

314.   He has incurred emotional distress due to the actions of Selene and US Bank, which caused the improper foreclosure.

315.   As a result of Defendants' actions he has been worried that he and his family will be evicted and will lose his home.

316.   He has lost income in rent not paid by his tenants due to this wrongful foreclosure without mediation.

319.   The Plaintiff has incurred actual damages as a result of the violations of the FDCPA:

    a.      Plaintiff has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for round trips totaling 8.6 miles. The IRS standard mileage allowance provides for .56 per mile.

    b.      Plaintiff has used his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to his cell phone usage and monthly fees.

    c.      Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

    d.      He has incurred attorney fees and costs for the prosecution of this action.

    e.      He has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home and a potential loss of his home, through an invalid foreclosure sale.

    f.      His mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan more expensive to the Plaintiff

320.   As a result of the above described acts of  Selene, it is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff demands that Judgment be entered against   Selene for the following relief:

A.     Judgment against Selene for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA and legal fees and costs

B.     For all other just and proper relief.

HENRY SALAZAR
By their Attorney

September 6, 2019                    /s/ John B. Ennis___
                                     JOHN B. ENNIS, ESQ. #2135
                                     1200 Reservoir Avenue
                                     Cranston, Rhode Island 02920
                                     (401) 943-9230
                                     Jbelaw75@gmail.com


## COUNT V

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY SELENE BY THREATENING TO EVICT THE PLAINTIFF FROM HIS HOME AND IN FACT FILING AN EVICTION AGAINST THE PLAINTIFF**

321.   Paragraphs 1-320 are incorporated by reference.

323.   Selene, has also through its attorney, threatened to evict the Plaintiff by two purported termination letters mailed to the Plaintiff in an attempt to collect a debt on behalf of US Bank as alleged above.

324.   It hired its attorney to send termination notices to the Plaintiff threatening to take legal action which could not be taken, in violation of 1692e(5) of the FDCPA.

325.   The Plaintiff has had to hire an attorney to defend these two complaints in the District Court.

326.   The Plaintiff has incurred actual damages as a result of the violations of the FDCPA:

     a.   Plaintiff has incurred costs for gasoline to visit his attorney on at least two occasions, driving to his attorney's office for round trips totaling 8.6 miles. The IRS standard mileage allowance provides for .56 per mile.

     b.   Plaintiff has used his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to his cell phone usage and monthly fees.

     c.   Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

     d.   He has incurred attorney fees and costs for the prosecution of this action.

     e.   He has incurred the cost of defending the two eviction cases by US Bank.

     f.   He has incurred the stress of being served with an eviction action threatening to evict him from his home along with his family.

WHEREFORE, Plaintiff demands that Judgment be entered against   Selene

for the following relief:

     A.   Judgment against Selene for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA and legal fees and costs

     B.   For all other just and proper relief.

HENRY SALAZAR
By their Attorney

September 6, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT VI
### VIOLATION OF REGULATION X FOR NOT CORRECTING AN ERROR REGARDING REMOVAL OF LEGAL FEES AND COSTS AND RESCIDNING A FORECLOSURE  DUE TO FAILURE TO COMPLY WITH  R.I.G.L. §34-27-3.2

327.   Paragraphs 1-326 are incorporated by reference.

327.   This is an action for actual and statutory damages filed by the Plaintiff for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and specifically of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau (CFPB).  This is also an action for actual and statutory damages filed by the Plaintiff for violations of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.  ("TILA").

328.   This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.

329.   Selene Finance, LP  performs its mortgage loan servicing business under the name of Selene. It is the servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real estate.

330.   In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the

Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

331.   Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z) (February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014 and were amended on April 19, 2018.

332.   The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

333.   The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers."  Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

334.   The Plaintiff is asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below.

335.   The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

336.   On or about November 21, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested.

337.   This request was made pursuant to 12 CFR § 1024.36(a).

338.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765001605252.

339.   The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

340.   The Notice was received by the Defendant on November 24, 2017.

341.   A copy of the Notice of Error is attached as Exhibit L to the original complaint.

342.   The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had added legal fees, advertising costs and other improper fees relating to an attempted foreclosure of Plaintiff's home without sending the Plaintiff a Notice of Mediation pursuant to R.I.G.L.§ 34-27-3.2.

343.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.

344.   The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

345.    As a result, in this case, the written response was due no later than January 10, 2018.

346.   Defendant did not  correct the error within thirty business days. When it did send a letter to Plaintiff after receiving this Notice of Error  on December 28, 2017, it failed to correct the error and refused to remove any fees for the purported foreclosure or rescind the foreclosure sale.

347.   Instead of responding to the Notice of Error and correcting the error, it stated in this letter:

Last, as it relates your inquires and notices of errors regarding the previous foreclosure action, we respectfully request that you contact our foreclosure counsel Korde and Associates, P.C. at (847)770-4125.

348.   This reference to contact its attorney did not comply with its responsibilities pursuant to Regulation X.

349.   This letter by Defendant was its only purported response to this Notice of Error.

350.   In its purported response, Selene did not comply  with its obligations under RESPA or Regulation X.

351.   Pursuant to 12 CFR 1024.35 , Defendant was required to respond to a Notice of Error as follows:

(**A**)Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(**B**) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

352.   Selene did neither. It did not correct the error. Nor did it conduct a reasonable investigation and provide the Plaintiff with a written notification that no error occurred as required by RESPA and Regulation X.

353.   Instead, Selene ignored the error and instead directed the Plaintiff to contact its foreclosure attorney, and did not comply in any way with its obligations under RESPA and Regulation X.

354.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this amended complaint and by failing to comply with its obligations under RESPA and Regulation X to respond to any of the other nine Notices of Error alleged in this Amended Complaint.

355.   As indicated by the other noncompliant responses to the   Notices of Error, the pattern and practice of Selene is to ignore Requests for Information and Notices of Error and to instead respond by letters which merely state a generic response denying that the consumer is entitled to this information or to merely ignore the error and make no response.

356.   As a result of this lack of compliance by the Defendant, Selene is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

357.   The Plaintiff has incurred actual damages, costs and legal fees arising from the failure and refusal of Selene to respond to or correct this Notice of Error as required by RESPA and 12 C.F.R. 1024.35.

358.   The  Plaintiff has incurred costs for  gasoline to visit his attorney to discuss the notice of error on at least five occasions, driving to his attorney's office for a round trip totaling 8.6 miles.  The IRS standard mileage allowance provides for .56 per mile.

359.    He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding the notice of error and refusal to rescind the foreclosure.

356.   He has incurred postage, costs of envelopes and paper  and copying costs in transmitting this Notice of Error to Selene.

357.   He has incurred attorney fees to his attorney in conjunction with his review of the error committed by Selene, which it has not corrected.

358.   His mortgage loan has been charged improper fees and costs arising from the purported foreclosure without sending a notice of mediation and a valid default letter, pursuant to the terms of the mortgage.

359.   He has taken time from his work schedule to discuss the failure of the Defendant to correct the error and the need to file this action regarding this error.

360.   He has incurred attorney fees and costs for the prosecution of this action regarding this failure to correct this error. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

361.    Selene has demonstrated by its failure to correct any of the  other errors alleged and the failure to properly respond to any errors alleged in this complaint, that it does not comply with the requirements of 12 C.F.R. 1024.35 and merely refuses to either acknowledge those errors or cites generic responses and does not make any reasonable efforts to comply with its obligations under RESPA or 12 C.F.R. 1024.35, but merely ignores all  Regulation X Requests for Information and Notices of Error.

WHEREFORE, Plaintiff demands judgment for all actual damages alleged in this Count plus statutory damages of $2,000.00 for this violation of Regulation X, plus attorney fees and costs.

HENRY SALAZAR
By his Attorney

September 6, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT VII

**VIOLATION OF REGULATION X FOR NOT CORRECTING AN ERROR REGARDING REMOVAL OF LEGAL FEES AND COSTS AND RESCINDING A FORECLOSURE DUE TO FAILURE TO MAIL THE CONSUMER A DEFAULT NOTICE WHICH WAS A CONDITION PRECEDENT TO ACCELERATION AND SALE AND THE EXERCISE OF THE STATUTORY POWER OF SALE**

361.   Paragraphs 1-360 are incorporated by reference.

362.   The Plaintiff is asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below. The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

363.   On or about November 21, 2017, the Plaintiff sent a written notice of error to the Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

364.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765001605368.

365.   The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

366.   The Notice was received by the Defendant on November 24, 2017.

367.   A copy of the Notice of Error is attached as Exhibit  J to the original complaint.

368.   Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had added legal fees, advertising costs and other improper fees relating to an attempted foreclosure of Plaintiff's home without sending the Plaintiff a Default Notice pursuant to the terms of the mortgage.

369.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request. The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than January 10, 2018.

370.   Defendant did not  correct the error within thirty business days. When it did send a letter TO Plaintiff after receiving this Notice of Error,   on December 28, 2017,   it failed to correct the error and refused to remove any fees for the purported foreclosure or rescind the foreclosure sale.

371.   Instead of responding to the Notice of Error and correcting the error, it stated in this letter:

Last, as it relates your inquires and notices of errors regarding the previous foreclosure action, we respectfully request that you contact our foreclosure counsel Korde and Associates, P.C. at (847)770-4125.

372.   This letter by Defendant was its only purported response to this Notice of Error.

373.   In its purported response, Selene did not comply  with its obligations under RESPA or Regulation X.

374.   Pursuant to 12 CFR 1024.35 , Defendant was required to respond to a Notice of Error as follows:

>   (A)Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

>   (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

375.   Selene did neither. It did not correct the error. Nor did it conduct a reasonable investigation and provide the Plaintiff with a written notification that no error occurred as required by RESPA and Regulation X.

376.   Instead, Selene ignored the error and instead directed the Plaintiff to contact its foreclosure attorney, and did not comply in any way with its obligations under RESPA and Regulation X.

377.   The Defendant has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this amended complaint and by failing to comply with its obligations under RESPA and Regulation X to respond to any of the other nine Notices of Error alleged in this Amended Complaint.

378.   As indicated by the other noncompliant responses to the    Notices of Error, the pattern and practice of Selene is to ignore Requests for Information and Notices of Error and to instead respond by letters which merely state a generic response denying that the consumer is entitled to this information or to merely ignore the error and make no response.

379.   As a result of this lack of compliance by the Defendant, Selene is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

380.   The Plaintiff has incurred actual damages, costs and legal fees arising from the failure and refusal of Selene to respond to or correct this Notice of Error as required by RESPA and 12 C.F.R. 1024.35.

381.   The  Plaintiff has incurred costs for  gasoline to visit his attorney to discuss the notice of error on at least one occasion, driving to his attorney's office for a round trip totaling 8.6 miles.  The IRS standard mileage allowance provides for .56 per mile.

382.    He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding the notice of error and refusal to rescind the foreclosure.

382.   He has incurred postage, costs of envelopes and paper  and copying costs in transmitting this Notice of Error to Selene.

384.   He has incurred attorney fees to his attorney in conjunction with his review of the error committed by Selene, which it has not corrected.

385.   His mortgage loan has been charged improper fees and costs arising from the purported foreclosure without sending a notice of mediation and a valid default letter, pursuant to the terms of the mortgage.

386.   He has taken time from his work schedule to discuss the failure of the Defendant to correct the error and the need to file this action regarding this error.

387.   He has incurred attorney fees and costs for the prosecution of this action regarding this failure to correct this error. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

388.    As alleged previously, Selene has demonstrated by its failure to correct any of the other errors alleged and the failure to properly respond to any errors, that it does not comply with the requirements of 12 C.F.R. 1024.35 and merely refuses to either acknowledge those errors or cites generic responses and does not make any

reasonable efforts to comply with its obligations under RESPA or 12 C.F.R. 1024.35, but merely ignores all  Regulation X Requests for Information and Notices of Error..

WHEREFORE, Plaintiff demands judgment for  all actual damages alleged in this Count plus statutory damages of $2,000.00 for this violation of Regulation X, plus attorney fees and costs.

HENRY SALAZAR
By his Attorney

September 6, 2019                    /s/ John B. Ennis___
                                     JOHN B. ENNIS, ESQ. #2135
                                     1200 Reservoir Avenue
                                     Cranston, Rhode Island 02920
                                     (401) 943-9230
                                     Jbelaw75@gmail.com

**COUNT V**
**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY US BANK's FAILURE TO SEND THE PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638**

389.   Paragraphs 1-388 are incorporated by reference.

390.   This is an action for damages brought by the Plaintiff, who is a consumer, for US Bank's  violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

391.   Specifically, Plaintiff seeks the remedies provided in TILA for Defendant's failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

392.   This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint

to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

393.   The Defendant, Selene is a limited liability company, which services residential mortgage loans.  Selene is the servicer of the mortgage loan, which is the subject of this complaint

394.   US Bank claims to be the owner of the mortgage note and mortgage loan.

395.   The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

396.   Plaintiff was not sent an accurate periodic monthly in compliance with 12 C.F.R. 1026.41 since  June 25, 2017.

397.   Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, US Bank was required to send the Plaintiff a monthly mortgage statement that provides the following information:

(**d**)  ***Content and layout of the periodic statement.***  The periodic statement required by this section shall include:
(**1**)  ***Amount due.***  Grouped together in close proximity to each other and located at the top of the first page of the statement:
(**i**)  The payment due date;
(**ii**)  The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and
(**iii**)  The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.
(**2**)  ***Explanation of amount due.***  The following items, grouped together in close proximity to each other and located on the first page of the statement:
(**i**)  The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;
(**ii**)  The total sum of any fees or charges imposed since the last statement; and
(**iii**)  Any payment amount past due.
(**3**)  ***Past Payment Breakdown.***  The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)** The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)** The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)** *Transaction activity.* A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)** *Partial payment information.* If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)** *Contact information.* A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)** *Account information.* The following information:

**(i)** The amount of the outstanding principal balance;

**(ii)** The current interest rate in effect for the mortgage loan;

**(iii)** The date after which the interest rate may next change;

**(iv)** The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

**(v)** The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

**(8)** *Delinquency information.* If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

**(i)** The date on which the consumer became delinquent;

**(ii)** A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

**(iii)** An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining

past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

(iv)  A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

(v)  A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

(vi)  The total payment amount needed to bring the account current; and

(vii)  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

398.   None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since June 25, 2017.

399.    The Plaintiff has been charged advertising costs and attorney and foreclosure costs and improper property maintenance charges in various amounts relating to an advertised foreclosure sale on the decedent's mortgage loan account which was charged to the mortgage loan account and were reflected on the mortgage statements sent to the consumer for all dates since June 25, 2017, as alleged in Count I of this complaint.

400.    These charges were not appropriate due to the fact that the consumer was not provided a mediation notice pursuant to R.I.G.L. 34-27-3.2 or a proper default notice pursuant to the terms of the mortgage and the purported property inspection fees were not proper charges pursuant to the terms of the mortgage.

401.   Due to the improper charges for the foreclosure expenses each of the three statements sent to the Plaintiff were defective as these charges or portions of theme were included in all statements sent to the consumer by Selene.

402.   When TILA was adopted, the purpose of this statute was to provide a homeowner with accurate information regarding the status of his mortgage loan account.

403.   This statute was designed to provide accurate information on a timely basis of all charges to the account so that the consumer could contest such charges in the event that the charges were not accurate.

404.   As alleged in Count I and this count of the complaint, the statements sent to the consumer from June 2017 to the date of the purported foreclosure were not accurate.

405.   These statements all deceptively stated the incorrectly charged fees and costs referenced in Count I of this complaint.

406.   As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, US Bank is liable for actual damages and statutory damages of up to $4,000.00 for any inaccurate statements since June 25, 2017  which were not in conformity with 12 C.F.R. 1026.41 and TILA or were not sent to the Plaintiff at all.

407.   As a result of his receipt of these deceptive and inaccurate statements, the Plaintiff was not provided the accurate information mandated by TILA regarding his actual obligation due on his mortgage loan account.

408.   As a result of his receipt of these deceptive and inaccurate statements, the Plaintiff incurred time from his work schedule and his life activities to read these inaccurate statements, taking the additional time to review these statements for accuracy.

409.   As a result of his receipt of these deceptive and inaccurate statements, he has incurred costs to visit his attorney on at least five occasions, to discuss the statements and their effect. driving to his attorney's office for a round trip totaling 8.6 miles.  The IRS standard mileage allowance provides for .56 per mile.

410.   As a result of his receipt of these deceptive and inaccurate statements, he has taken time to call his attorney and a Spanish speaking interpreter to assist him in reviewing these statements.

411.   The loan servicer Selene reported the principal balance of the mortgage loan reported on each of these deceptive and inaccurate statements to the three credit reporting agencies, thus causing the amount due on his mortgage loan account to be reported inaccurately.

412.   The inaccurate charges and balances on his periodic statements where reported to the three credit reporting agencies and adversely effected his credit score, causing him decreased credit opportunities.

413.   He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with their attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

WHERFORE, Plaintiff demands Judgment against US Bank for statutory damages of at least $4,000.00, for each failure to send a monthly mortgage statement in conformity with TILA since June 25, 2017 plus actual damages, plus attorney fees and costs and all other just and proper relief.


September 6, 2019

HENRY SALAZAR
By its Attorney


/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com


## COUNT VII
## DECLARATORY JUDGMENT

414.   Paragraphs 1- 415 are incorporated by reference.

416.   This Court has jurisdiction to issue Declaratory Judgments.

417.   The failure of US Bank to comply with the terms of the mortgage, by virtue of a valid default notice and to provide mediation rendered the purported foreclosure void.

418.   The purported exercise of the statutory power of sale by US Bank  on July 20, 2017, without a valid default notice and without a Notice of Mediation having been sent rendered the purported foreclosure void.

419.   As a result the purported deed recorded in the City of Providence should be vacated and rescinded.

420.   This Court has the power to declare that the aforementioned deed to be void and without any effect.

421.   Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore Plaintiff demands the following relief:

A. A declaration that the foreclosure sale of the Plaintiff's Property on July 20, 2017, was invalid and void;

B. A declaration that the foreclosure deed recorded on August 22, 2017, in the land records for the City of Providence  at Book  11807 Page 128, is invalid and void;

C. Order  Bank and Selene to pay back to Pedro Salazar any consideration that he paid for the property.


HENRY SALAZAR

By his Attorney

September 6, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com


Plaintiffs demand a Trial by Jury on all Claims Triable by a Jury