UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

HENRY SALAZAR,

        Plaintiff,

v.

SELENE FINANCE, LP; U.S. BANK
NATIONAL ASSOCIATION AS LEGAL TITLE
TRUSTEE FOR BCAT 2016-18TT; and PEDRO
TAVERAS,

        Defendants.

C.A. No. 1:18-cv-00495-WES-PAS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SELENE FINANCE LP
AND U.S. BANK, AS TRUSTEE'S MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT**

## I. INTRODUCTION

Plaintiff, Henry Salazar (the "Plaintiff") pursues an Amended Complaint to challenge the

July 20, 2017 foreclosure sale of property located at 84 Merino Street, Providence, Rhode Island

(the "Property"), which continues a case without any fact or legal basis that would entitle him to

the relief requested. The Amended Complaint includes many of the same causes of action and

demands for relief from the original complaint, which rely in large part on three separate

allegations: (i) Plaintiff did not receive a notice of mediation conference as required under R.I.

Gen. Laws § 34-27-3.2; (ii) Plaintiff did not receive a notice of default that strictly complied with

Paragraph 22 of his mortgage agreement; and (iii) Plaintiff did not receive any periodic monthly

statements after June 25, 2017. The fact allegations and incorporated documents that form the

basis of this lawsuit, however, demonstrate that Plaintiff has not satisfied the jurisdictional

requirements to pursue violations of § 34-27-3.2, that Plaintiff received and ignored the

opportunity to mediate prior to foreclosure, that Plaintiff received and ignored a valid and

compliant Paragraph 22 Notice of Default, and that Plaintiff was not entitled to receive monthly mortgage loan statements once he defaulted and the Property was foreclosed. Plaintiff also fails to allege particularized harm and concrete injury and has no legal right to private action under R.I. Gen. Laws § 19-14.11-1 so that the Amended Complaint wholy lacks any factual predicate to state a claim for which relief can be granted. Accordingly, Defendants Selene Finance LP ("Selene") and U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee for BCAT 2016-18TT ("U.S. Bank, as Trustee") (collectively "Defendants") request that this Court dismiss Plaintiff's Amended Complaint.

## II. STATEMENT OF ALLEGATIONS

### A.   <u>Plaintiff's Mortgage, Default and Foreclosure</u>

On May 29, 2007, Plaintiff obtained a $285,000 loan evidenced by a promissory note (the "Note") to Bank of America, N.A. ("Bank of America").[1] (Amended Complaint, ECF No. 33 (hereafter "Am. Compl."), ¶ 14.) To secure his repayment obligations under the Note, Plaintiff granted Bank of America a mortgage on the Property (the "Mortgage"). (Am. Compl., ¶ 15.) The Mortgage granted the "Lender" the power to accelerate the mortgage loan upon the mortgagor's default and to invoke the statutory power of sale. (Mortgage, Ex. A to Complaint, ECF. No. 1-3, pp. 34-54.) The Mortgage was recorded in the City of Providence Land Evidence Records on May 30, 2007 at Book 8698, Page 4. (Am. Compl., ¶ 16.) On October 25, 2016, Bank of America assigned the Mortgage to U.S. Bank, as Trustee by an assignment recorded in the Land Evidence Records on December 12, 2016 at Book 11585, Page 171.[2] (Am. Compl., ¶ 18.)

---

[1] For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual matters alleged are accepted as true. See *Era v. Morton Cmty. Bank*, 8 F. Supp. 3d 66, 69 (D.R.I. 2014).
[2] Paragraph 20 of the Amended Complaint includes an allegation that Bank of America transferred its interest in the Plaintiff's Mortgage to a trust known as BCAT2016-18TT through an unrecorded assignment even though Plaintiff alleges that the Bank of America assigned the Mortgage to U.S. Bank, as Trustee in Paragraph 18.

1012775\304465524.v1

By April 14, 2017, Selene had referred Plaintiff's Mortgage to foreclosure counsel, Korde & Associates, P.C. ("Korde"), to exercise the statutory power of sale and foreclose on the Property.[3] (Am. Compl., ¶ 21.) The Amended Complaint refers to a Notice of Default, which is attached to Plaintiff's original complaint as Exhibit C, which reflects a notice date of April 14, 2017, and that the notice was sent by First Class & Certified Mail. (Notice of Default, *Exhibit C* to Complaint, ECF No. 1-3 at p. 59.) Plaintiff, however, speculates that "[o]n April 15, 2017, on behalf of the Defendants, Korde deposited into the United States mail a purported Default letter to the Plaintiff." (Am. Compl., 22.)

The Notice of Default further indicates that Plaintiff's loan was in default for the February 1, 2016 payment and all payments due each month thereafter, that the amount required to cure the default was $31,144.62, and that demand was made against Plaintiff to cure the default by May 14, 2017. (Notice of Default, *Exhibit C* to Complaint, ECF No. 1-3 at p. 59.) To cure default, the Notice of Default required Plaintiff to pay the total amount of $31,144.62 in addition to other amounts that may become due from the date of this letter to through the payment date, and instructed Plaintiff to contact Korde to request the full amount owed. (*Id.*) The Notice of Default further informed Plaintiff that unless the arrearage was received by May 14, 2017, U.S. Bank, as Trustee may accelerate the payment of all sums and exercise all rights as set forth under the power of sale in the Mortgage including a foreclosure sale of the Property. (*Id.*) Finally, the Notice of Default advised Plaintiff that he had the right "to reinstate after acceleration" and "to bring court action to assert the non-existence of a default or any other defense…to the acceleration and sale of the mortgaged premises." (*Id.*)

---

[3] Plaintiff does not deny or challenge default on the Note and breach of the Mortgage that permitted U.S. Bank, as Trustee to proceed with foreclosure.

1012775\304465524.v1

On or about May 26, 2017, Korde, sent a Notice of Sale pursuant to R.I. Gen. Laws § 34-27-4 to Plaintiff, which stated an intent to sell the Property on July 20, 2017 at 1:00pm.[4] (Am. Compl., ¶¶ 23-25.) Plaintiff has alleged that he was not provided Notice of Mediation by these Defendants in connection with Korde's Notice of Sale and the July 20, 2017 foreclosure. (Am. Compl., ¶¶ 26-27.) The foreclosure sale of the Property occurred on July 20, 2017, at which sale U.S. Bank, as Trustee purchased the Property for $128,000.00. (Am. Compl., ¶¶ 28-30; Foreclosure Deed, *Exhibit E* to Complaint, ECF No. 1-3 at pp. 64-87.) A foreclosure deed was executed in favor of U.S. Bank, as Trustee on August 8, 2017 and recorded in the Property's chain of title in the Land Evidence Records on August 22, 2017 at Book 11807, Page 128. (Am. Compl., ¶ 29; Foreclosure Deed, *Exhibit E* to Complaint.)

### B.   U.S. Bank, as Trustee's Eviction Proceedings

Plaintiff alleges that U.S. Bank, as Trustee granted Selene a power of attorney that authorized Selene to conduct foreclosure sales and eviction proceedings, and that Selene in turn hired Korde to conduct the eviction. (Am. Compl., ¶¶31-33.) By letter dated December 28, 2017, Korde sent a Notice of Termination of Tenancy at 84 Merino Street, Unit 1 to Plaintiff, John Doe and Jane Doe which demanded that the tenant vacate the Property by February 1, 2018, and that if the tenant failed to vacate, an eviction action may be instituted. (Am. Compl., ¶¶ 33-35; Unit 1 Notice of Termination, *Exhibit F* to Complaint, ECF No. 1-4 at p. 5.) By letter dated December 28, 2017, Korde sent a Notice of Termination of Tenancy at 84 Merino Street, Unit 2 to Plaintiff, John Doe and Jane Doe which demanded that the tenant vacate the Property by February 1, 2018,

---

[4] Plaintiff appears to challenge Korde's authority act on behalf of the Defendants in Paragraph 23 despite also alleging that Selene referred Plaintiff's Mortgage to Korde to exercise the statutory power of sale and foreclose in Paragraph 21.

and that if the tenant failed to vacate, an action against may be instituted. (Am. Compl., ¶¶ 36-39; Unit 2 Notice of Termination of Tenancy, *Exhibit G* to Complaint, ECF No. 1-4 at p. 8.)

On March 6, 2018, Korde filed a Complaint for Eviction on behalf of U.S. Bank, as Trustee of Unit 1 at the Property and against Plaintiff, Alba Aquino, Joel Cosmentino, Marvin Lopez a/k/a Miguel Marvin Lopez, Yobani Urizar, Jennifer Urizar, John Doe and Jane Doe in the Providence District Court. (Am. Compl., ¶¶ 40-41; Complaint for Eviction, *Exhibit H* to Complaint, ECF No. 1-4 at pp. 11-13.) The Complaint for Eviction of Unit 1 was voluntarily dismissed as of May 16, 2018. (Am. Compl., ¶ 55; Providence District Court Docket Civil Action No. 6CA-2018-02934.) On March 6, 2018, Korde filed a Complaint for Eviction on behalf of U.S. Bank, as Trustee of Unit 2 against Plaintiff, Alba Aquino, Joel Cosmentino, Marvin Lopez a/k/a Miguel Marvin Lopez, Yobani Urizar, Jennifer Urizar, John Doe and Jane Doe in the Providence District Court. (Am. Compl., ¶¶ 42-43.; *Exhibit I* to Complaint, ECF No. 1-4 at pp. 15-17.) The Complaint for Eviction of Unit 2 was voluntarily dismissed as of May 16, 2018 (Am. Compl, ¶ 55; Providence District Court Docket Civil Action No. 6CA-2018-02952.)

### C.   Post-Foreclosure Conveyance to Defendant Pedro Taveras

Selene listed the Property for sale on Auctions.com. (Am. Compl., ¶ 56.) Selene solicited a bid from Pedro Taveras ("Mr. Taveras"), who Plaintiff alleges offered to purchase the Property for $186,600. (Am. Compl., ¶ 57.) U.S. Bank, as Trustee conveyed the Property to ("Mr. Taveras") by Special Warranty Deed on April 26, 2018 for $180,600.00 and recorded on May 10, 2018 at Book 12034, Page 108. (Am. Compl., ¶¶ 61-63; Special Warranty Deed *Exhibit K-1* to Complaint, ECF No. 1-4 at pp. 45-47.) Mr. Taveras mailed the Plaintiff a Notice of Termination of Tenancy on May 18, 2018. (Am. Compl, ¶ 67.) Mr. Taveras subsequently commenced an eviction action on June 4, 2018 (Am. Compl., ¶ 68; Providence District Court

Docket Civil Action No. 6CA-2018-06790.). Final judgment as to possession has not entered in Mr. Taveras' eviction action. (*Id.*)

### D.   Notice of Error

On November 21, 2017, Plaintiff issued a Notice of Error pursuant to Regulation X of the Real Estate Settlement Procedures Act ("RESPA") to assert that Selene committed error because neither Selene nor U.S. Bank, as Trustee sent Plaintiff a Notice of Mediation in compliance with R.I. Gen. Laws § 34-27-3.2. (Am. Compl., ¶ 44.) Selene received the Notice of Error on November 24, 2017. (Am. Compl., ¶ 45.) On November 21, 2017, Plaintiff issued a second Notice of Error under RESPA on allegations that the April 14, 2017 Notice of Default was defective because it was not placed in the United States mail until April 15, 2017 at 12:42 AM by a vendor in the Boston, Massachusetts Distribution center. (Am. Compl., ¶ 46.) Plaintiff alleges that Selene received the Notice of Error on November 24, 2018. (Am. Compl, ¶ 47.) Selene disputed and denied the Notices of Error. (Am. Compl., ¶49.)

### E.   Statement of Claims

Plaintiff's Amended Complaint includes nine causes of action:

1.   Paragraphs 71-261 are entitled Count II Breach of Contract and Breach of Covenant of Good Faith and Dealing. This claim relies upon a series of allegations concerning the Notice of Default's strict compliance with Paragraph 22 of the Mortgage. (Am. Compl., ¶¶71-231.) This claim further relies upon a series of allegations that Plaintiff did not receive a notice of mediation as required by R.I. Gen. Laws § 34-27-3.2. (Am. Compl., ¶¶232-241.) Finally, Plaintiff's contract claim relies upon an allegation that each periodic statement mailed to Plaintiff was inaccurate due to improper fees charged to the mortgage loan account. (Am. Compl., ¶ 242.)

2.   Paragraphs 262-287 are entitled Count II Violation of the Provisions of Rhode Island General Laws § 34-27-3.2. This claim relies upon allegations that Plaintiff did not receive a notice of mediation. (Am. Compl., ¶¶ 262-287.)

3.   In Count III, Plaintiff claims violations of R.I. Gen. Laws § 19-14.11-4 against Selene as a third-party loan servicer. (Am. Compl., ¶¶ 288-294.)

1012775\304465524.v1

4.      In Count IV, Plaintiff claims violations of the Fair Debt Collection Practices Act ("FDCPA") by Selene threatening to schedule a foreclosure sale without mailing Plaintiff a notice of mediation. (Am. Compl., ¶¶ 295-320.)

5.      In Count V, Plaintiff claims violations of the FDCPA by Selene threatening to evict Plaintiff from the Property and by filing an eviction action. (Am. Compl., ¶¶321-326.)

6.      In Count VI, Plaintiff claims violations of Regulation X under RESPA for Defendants' refusal to rescind foreclosure due to an alleged failure to send a mediation notice. (Am. Compl., ¶¶327-361.)

7.      In Count VII, Plaintiff claims violations of Regulation X under RESPA for Defendants' refusal to rescind a foreclosure due to an alleged defective notice of default. (Am. Compl., ¶¶ 361-388.)

8.      In another Count V, Plaintiff claims violation of the Truth in Lending Act, 15 U.S.C. § 1638, and Regulation Z, 12 C.F.R. 1026.41 ("TILA"), based upon allegations that the Defendants should have sent him monthly mortgage loan statements following his failure to cure default and foreclosure. (Am. Compl., ¶¶ 389-413.)

9.      In Count VII, Plaintiff seeks declaratory relief to void the foreclosure based upon the allegations of a defective notice of default and no notice of mediation. (*Id.* at ¶¶ 160-166.)

## III. STANDARD OF REVIEW

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Lemelson v. U.S. Bank Nat. Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013) ("Dismissal for failure to state a claim is appropriate if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." (internal quotation marks omitted)). In the aftermath of *Iqbal* and *Twombly*, a federal court's inquiry must first "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)" and then second, must determine "whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." *Garcia-Catalan v. United*

7

*States*, 734 F.3d 100, 103 (1st Cir. 2013) (internal quotation marks and citations omitted). A court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires it to "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014). However, the Court is entitled to disregard those facts which have been "'conclusively contradicted by plaintiffs' concessions or otherwise.'" *Soto-Negron v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir.1987)).

## IV. ARGUMENT

A.    **The Court Should Dismiss Plaintiff's Amended Complaint to the Extent Plaintiff's Causes of Action Rely on Allegations that Defendants Violated Rhode Island's Mediation Statute.[5]**

Plaintiff seeks to void foreclosure and U.S. Bank, as Trustee's sale of the Property to Tavares, in addition to relief under FDCPA, RESPA and TILA, on allegations that the Defendants failed to send him a notice of mediation in accordance with R.I. Gen. Laws § 34-27-3.2. All causes of action that arise from Plaintiff's claim that Defendants did not comply with Rhode Island's mediation statute are barred as a matter of law, because Plaintiff has not satisfied the jurisdictional requirements of the mediation statute. Rhode Island's mediation statute includes the following prerequisites to suit:

> Any person who claims that a foreclosure is not valid due to the mortgagee's failure to comply with the terms of this section shall have one year from the date that the first notice of foreclosure was published to file a complaint in the superior court for the county in which the property is located and shall also file in the records of land evidence in the city or town where the land subject to the mortgage is located a notice of lis pendens, the complaint to be filed on the same

---

[5] The counts that rely upon the mediation allegations are Breach of Contract Claim (Count II), Violation of R.I. Gen. Laws § 34-27-3.2 Claim (also labelled Count II), FDCPA Claim (Count IV), RESPA Claim (Count VI), TILA Claim (Count V) and Declaratory Judgment Claim (Count VII).

8

> day as the notice of lis pendens or within seven (7) days thereafter. Failure to file
> a complaint, record the notice of lis pendens, and serve the mortgagee within the
> one-year period shall preclude said mortgagor, or any other person claiming an
> interest through a mortgagor, from subsequently challenging the validity of the
> foreclosure.

R.I. Gen. Laws § 34-27-3.2(p). Here, the allegations of Plaintiff's Amended Complaint demonstrate that he did not file suit within one year from the date the first notice of foreclosure was published. According to the Plaintiff, Korde sent notice of sale on or about May 26, 2017, which stated an intention to sell the Property at foreclosure on July 20, 2017. (Am. Compl., ¶ 23.) Plaintiff did not file suit, however, in the Rhode Island Superior Court, until June 25, 2018, which is more than one year after Plaintiff first received notice.[6]

Plaintiff also failed to record a notice of *lis pendens* when he filed suit, or within seven days thereafter. Indeed, a review of title for the Property on the City of Providence Land Evidence Records' website demonstrates that no such *lis pendens* has ever been recorded. *See https://i2f.uslandrecords.com/RI/Providence/D/Default.aspx.*[7] Lastly, Plaintiff has failed to serve the complaint on the mortgagee, U.S. Bank, as Trustee, within one year from the date of the first notice of foreclosure because the docket reflects that U.S. Bank, as Trustee was not served until August 17, 2018. Plaintiff's failure to file the complaint, record the notice of *lis pendens*, and serve the mortgagee within the one-year period bar any challenge to the validity of the foreclosure. R.I. Gen. Laws § 34-27-3.2(p). Plaintiff has no jurisdictional basis to claim

---

[6] Plaintiff may argue that the deadline to file suit should be measured from the Notice's publication date, but review of the publication date listed in the Mortgage's Notice of Sale (June 28, 2017) demonstrates that Plaintiff still failed to serve U.S. Bank, as Trustee within 1 year of June 28, 2017.

[7] Defendants initially raised issue with the Plaintiff's failure to record a *lis pendens* in the Property's chain of title as a prerequisite to suit as part of their initial memorandum of law in support of their September 13, 2018 Motion to Dismiss. (ECF No. 6-1 at pp. 6-7.) To date, Plaintiff still has not recorded a *lis pendens*.

1012775\304465524.v1

violations of Section 34-27-3.2, and the Court must dismiss all claims in the Amended Complaint to the extent Plaintiff relies upon violations in the notice of mediation.

Even if the Court were to look beyond Plaintiff's jurisdictional failings under the mediation statute, the record in this case demonstrates that Plaintiff received and ignored notice to participate in mediation prior to foreclosure that Bank of America issued. (ECF No. 5-1 at pp. 54-57) The foreclosure deed includes a sworn statement of Selene, as attorney-in-fact for U.S. Bank, as Trustee, that U.S. Bank, as Trustee "mailed, or caused to be mailed on April 4, 2016 by first class mail and certified mail, return receipt requested, written notice of the Mortgagor's right to mediation conference as required by R.I.G.L. 34-27-3.2…." (*Id.*) Plaintiff's theory of the case appears to be that even though a notice of mediation was sent prior to the foreclosure (to which Plaintiff did not respond), a second notice was required once Bank of America assigned the mortgage to U.S. Bank, as Trustee.

No provision within § 34-27-3.2 requires a mortgagee to resend a notice of mediation if an assignment of mortgage is recorded during the pendency of a statutory power of sale foreclosure. Moreover, no provision within this statute provides for, much less even contemplates, multiple opportunities for a mortgagor to mediate in connection with a single foreclosure action. In fact, the statute eliminates the need for mediation if and when the mortgagor does not respond to the mediation coordinator:

> If, after two (2) attempts by the mediation coordinator to contact the mortgagor, the mortgagor fails to respond to the mediation coordinator's request to appear at a mediation conference, or the mortgagor fails to cooperate in any respect with the requirements of this section, the requirements of this section shall be deemed satisfied upon verification from the mediation coordinator that the required notice was sent….Upon verification, a certificate will be issued immediately by the mediation coordinator authorizing the mortgagee to proceed with the foreclosure action, including recording the deed.

1012775\304465524.v1

R.I. Gen. Laws §34-37-3.2(g). In this case, the Mediation Coordinator issued a Certificate of Compliance on June 14, 2016, which indicates that Plaintiff was properly served with a notice of mediation, and that after two attempts to contact the Plaintiff, the Plaintiff failed to the request to appear or otherwise participate in the Mediation Conference. (Certificate of Compliance, ECF No. 5-1 at p. 56.) The allegations of Plaintiff's Complaint demonstrate one singular default by one mortgagor, the Plaintiff, and one foreclosure, which proceeded only after Plaintiff failed to respond to the mediation request.

In *Fontaine v. U.S. Bank Nat'l Ass'n*, No. PC 2015-0216, 2015 R.I. Super. LEXIS 67 (R.I. Super. May 15, 2015), the Rhode Island Superior Court reviewed the legislative history, intent and purpose behind the enactment of Rhode Island's pre-foreclosure mediation statute to determine if borrowers could enjoin foreclosure sales that violated 34-27-3.2. Superior Court Justice Van Couyghen explained that the 2013 statute mandated that, subject to some limitations, a mortgagee cannot foreclose with first participating in a mediation conference. *See id.* at *6-*7. The court's decision responded to any unfairness mortgagees claimed in forced mediation prior to foreclosure with analysis that the mediation statute simply required mortgagees to send a mediation notice in an attempt to achieve a resolution prior to foreclosure. *Id.* at 14-*15. If the mortgagor does not respond, the mortgagee can proceed, and the "mediation requirement does not amount to a lengthy delay of foreclosure since the statute makes clear that the mediation conference must take place within sixty days of the mortgagee sending the mediation notice." *Id.*

In this action, Plaintiff does not dispute receipt of the mediation notice, and he has not alleged any affirmative step or effort he undertook to contact the Mediation Coordinator, or to mediate the default and avoid foreclosure during the sixty days following the mailing of the notice. Plaintiff has not even demanded mediation in the course of relief sought for alleged

1012775\304465524.v1

violations of the mediation statute, or for any other causes of action that rely upon these alleged violations including a request for preliminary and permanent injunctive relief. Instead, it appears that the sole purpose of the violation alleged is delay. With allegations to demonstrate that Plaintiff received notice of mediation, and without allegations to demonstrate that Plaintiff has met the jurisdictional perquisites to challenge compliance with the mediation statute, this Court should dismiss Count II (Am. Compl., ¶¶ 262-287) in its entirety. In addition, the Court should dismiss the Breach of Contract Claim, the FDCPA Claim, the RESPA Claim, the TILA Claim and the Declaratory Judgment Claim because the particular errors Plaintiff raise all rely upon this claim that the foreclosure is void for failure to comply with the Mediation Conference statute.

**B.** **Plaintiff Cannot Establish Any Breach of Contract Under Count II or Any Violation of RESPA under Count III because the Notice of Default Complied with Paragraph 22 of the Mortgage**

Plaintiff claims that Defendants breached the terms of the Mortgage (Count II), violated RESPA (Count VII), and violated the FDCPA (Count IV) by issuing a Notice of Default prior to foreclosure that did not strictly comply with Paragraph 22 of the Mortgage. Review of the face of the notice, however, contradicts Plaintiff's conclusory assertions and demonstrates the absence of any relief under each of these counts in the Amended Complaint. In *Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp. 3d 163, 169 (D.R.I. 2016), the Rhode Island federal court issued a decision that requires a mortgagee's strict compliance with the notice provisions established in paragraph 22 of standard-form mortgage agreements. Here, Paragraph 22 of Plaintiff's Mortgage requires any notice of default to disclose the following:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to

12

assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(Mortgage, Ex. A to Complaint, ECF No. 1-3 at pp. 46-47.)

Plaintiff alleges a series of futile challenges to the notice itself, which are conclusory, speculative and cannot overcome the face of the notice demonstrating strict compliance with Paragraph 22:

      i.    <u>Plaintiff Presents no Valid Basis to Challenge the Time Provided to Cure Default</u>.

Plaintiff argues that the Notice of Default failed to provide 30 days to cure on allegations that the notice was not "deposited in the United States Postal Service Regional Facility" until April 15, 2017. (Am. Compl., ¶¶83-104.) Paragraph 22 of the Mortgage requires that the notice of default set a date 30 days from the date the notice is *given* to Borrower by which the Borrower must cure the default. (Mortgage, ECF No. 1-3, p. 46.) Paragraph 15 of the Mortgage (Notices) provides: "Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." (*Id.* at p. 44.) The face of the Notice of Default establishes without dispute that the notice was dated April 14, 2017, was mailed "First Class & Certified Mail" and advised Plaintiff that he had to cure default by May 14, 2017, which is 30 days from April 14. (Notice of Default, ECF No. 1-3, p. 59.) Contrary to Plaintiff's conclusory assertions, the face of the Notice of Default demonstrates a first class mailing, which deems the notice as given on the date of the letter according to the mortgage.

Plaintiff relies on registered mail records to argue that notice was not given until April 15, 2017 because the United States Postal Service's Boston office registered the mail on that date. In order to consider this allegation to justify the claim for relief, the Court must assume, without any fact allegations, that Korde sent the Notice of Default on the same date the notice was registered at the USPS in Boston. This claim further requires the Court's acceptance of shear

speculation that Korde dated the notice April 14 but then waited until April 15 to actually deposit the notice into the mail. Indeed, Plaintiff's speculation is contradicted by the face of the notice itself, which indicates Korde's hours of operation: Monday through Friday, 8:30am to 5:30pm. April 15, 2017 was a Saturday.

      ii.     <u>Plaintiff Speculates that Use of the Word "By" in the Notice Fails to Provide a Specific Date</u>

Plaintiff presents no viable challenge to the Notice of Default's compliance by arguing that the letter did not state a specific date to cure. In *Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp. 3d 163, 169 (D.R.I. 2016), Judge McConnell voided a pre-foreclosure notice of default Green Tree Servicing, LLC issued based on undisputed facts that notices of default did not state with specificity the last day by which the borrower was required to pay in order to avoid foreclosure. Review of the two notices Green Tree generated in connection with the foreclosure sale in *Martins* demonstrates that both notices failed to provide any date by which the borrower could reinstate her loan to avoid foreclosure. The February 11, 2004 Green Tree Notice of Default stated: "Within thirty (30) days from the date of this notice you may cure your default by sending the total amount of **$93,240.41**...." (Notice of Default, *Martins v. Fed. Hous. Fin. Agency*, C.A. No. 15-235, Doc. 42-3 at p. 1, *Exhibit A*.) The April 22, 2014 Notice issued by Green Tree's foreclosure counsel provided the borrower "thirty days" to dispute the debt without any specific deadline. (Harmon Notice, *Martins v. Fed. Hous. Fin. Agency*, C.A. No. 15-235, Doc. 23-9 at p. 2, *Exhibit B*.)

Here, Plaintiff alleges that the Defendants' use of the phrase "by May 14, 2017" was not specific. (Am. Compl., ¶¶ 105-110.) Plaintiff cannot credibly challenge the Notice of Default for failure to provide a specific date to cure when review of the face of notice demonstrates an exact date by which the Plaintiff had to cure. Plaintiff's allegations interpreting "by" under Rhode

Island law have no fact basis or merit and completely miss the precedent, purpose and point of Judge McConnell's decision in *Martins*: that the Notice of Default must provide Plaintiff with an actual date by which he must cure, that the date must be 30 days from the date of the Notice, and that the Defendants must accept cure at any time during that 30-day period.

      iii.    <u>Plaintiff Defies the Mortgage in Objecting the Defendants' Notice of Action Required to Cure the Default</u>

Plaintiff alleges a defect in the Notice of Default on grounds of conditions that were imposed in order to cure the default, primarily the requirement of payment by certified funds and that Plaintiff was required to contact the Defendants in order to cure. (Am. Compl., ¶¶111-142.) Plaintiff misunderstands and misreads Paragraph 22 as requiring the "Plaintiff to be provided a specific and accurate amount required to cure the mortgage." (*Id.* at ¶125.) Contrary to Plaintiff's allegation, Paragraph 22 of the Mortgage requires disclosure of the default and the action required to cure. (Mortgage, ECF No. 1-3 at pp. 46-47.) Paragraph 22 of the Mortgage does not circumscribe the conditions imposed by the mortgagee in order to cure the default so that the Plaintiff here can object to a demand of payment by certified funds, or object to contact with the mortgage holder to verify the exact amount past due on the account in order to reinstate. Instead, Paragraph 22 required the Defendants to disclose the *action* required to cure, and here Defendants required that the Plaintiff make any cure payment by certified funds. Defendants also required contact with the Plaintiff in order to determine the precise amount to cure for the simple and explained fact that interest, late charges and other charges or credits on the loan may vary from day to day.

      iv.    <u>Plaintiff Presents No Valid Basis to Challenge the Notice of Default by Objecting to Costs, Fees and Expenses</u>

Plaintiff challenges the Notice of Default by objecting to the Defendants' inclusion of costs and fees and expenses as part of the $31,144.62 required to cure the default. (Am. Compl.,

1012775\304465524.v1

¶¶ 143-233.) Simply challenging the amount owed, based upon allegation of improper fees charged, cannot render the notice defective in terms of compliance with Paragraph 22, because the purpose of the document is to provide Plaintiff with notice of the fees charged to his account under the terms of the Mortgage. In Paragraph 9 of the Mortgage, if the borrower (here, the Plaintiff) fails to perform the covenants and agreements of the mortgage, the agreement allowed Defendants to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property." (Mortgage, ECF No. 1-3 at p. 41.) Specifically, "[s]ecuring the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off." (*Id.*) The Mortgage further provides that any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. (*Id.*) Paragraph 14 of the Mortgage allows the lender to "charge the Borrower fees for services performed in connection with the Borrower's default, for the purpose of protecting the Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." (Mortgage, ECF No. 1-3 at pp. 43-44.)

Here, Plaintiff attempts to argue that <u>all</u> of the fees charged, for one speculative reason or another, are not recoverable under the terms of the Mortgage, were not actually paid, and were not reasonable under the circumstances. For example, Plaintiff alleges property inspection fees on December 21, 2016, January 19, 2017, February 24, 2017 and March 21, 2017 amounted to "charges [that] were not permitted by the terms of the mortgage and were neither reasonable nor

necessary and were not actually paid by the servicer." (Am. Compl., ¶¶ 164-165.) The Plaintiff is attempting to impose limitations on the Defendants' right to conduct routine and regular inspections all as a result of Plaintiff's default on the note and breach of the mortgage, a fact which Plaintiff does not deny. Plaintiff's allegation that fees were not actually charged is sheer and utter speculation. Plaintiff's allegation that Selene knew Plaintiff was living at the Property and therefore was not permitted to conduct a monthly inspection to ensure occupancy defies the terms of the Mortgage and the Defendants' right to ensure protection of the security interest for repayment of a mortgage loan in default.

In another example, Plaintiff objects to fee of $350 for a title search on assertions that such a fee is unreasonable. (Am. Compl. ¶¶ 192-203.) Plaintiff speculates that attorneys in Rhode Island regularly do not charge more than $150 for a title search. Plaintiff further speculates that if a non-attorney performed a title search, the amount of a reasonable charge should have been no more than $100. Plaintiff further speculates that the only obligation of a title searcher in this matter would be to go online and check the index and documents recorded from the date of the mortgage forward. The Court cannot credit these speculative and conclusory assertions presented as a means of objecting to the actual costs these Defendants incurred in proceeding to foreclosure following the Plaintiff's default. The Plaintiff has dumped into the Amended Complaint virtually any and every speculative allegation to challenge a fee charged to the mortgage loan in order to claim a defect in the Notice of Default. The Plaintiff presents no credible fact allegations to deny that these fees were paid for services rendered as a result of the Plaintiff's default and to proceed with foreclosure. The fact remains that the Defendants properly noticed default and the amount owed based upon unpaid principal balance, interest, penalties, fees and charges assessed.

1012775\304465524.v1

v.      Plaintiff's Remaining Issues with the Notice of Default Present No Viable
         Challenge

Plaintiff claims that the Notice of Default was deceptive relying on an allegation that the

notice informed him that Korde had been hired to commence foreclosure proceedings and that

the exercise of the power of sale is not a proceeding. (Am. Compl., ¶¶ 234-237.) This allegation

is nonsensical and so is Plaintiff's conclusive speculation that the Notice of Default's use of the

word proceeding meant that a judicial foreclosure would proceed. The Court should disregard

this allegation.

Plaintiff alleges that the Notice of Default was deceptive in failing to advise him that the

right to reinstate would expire five days before the sale date. (Am. Compl., pp. 24-25.)[8]

Paragraph 22, however, only requires that the lender inform the borrower that he has the right to

reinstate after acceleration. The disclosures do not require information as to when and how

reinstatement can be paid in accordance with Paragraph 19.

**C.      Plaintiff has no Private Right of Action to Assert a Claim under R.I. Gen.
          Laws § 19-14.11-4**

This Court must dismiss Count III of Plaintiffs' Complaint because Title 19 does not

provide Plaintiffs with a private right of action. Section 19-14.11-1 *et seq.* went into effect on

January 1, 2015 under the Financial Institutions title of the Rhode Island General Laws. Within

the Financial Institutions title, the General Laws provide express instruction on the enforcement

of this and all other sections within Title 19:

> The director may impose an administrative assessment, as well as the penalties
> provided for under § 19-14-26, against any person named in an order issued under
> subsection (e) or, in accordance with the rules and regulations promulgated
> pursuant to § 19-14-30, against any person who violates, or participates in the
> violation of, any of the applicable provisions of this title, *or any regulation*
> *promulgated pursuant to any provisions of this title*."

---

[8] The paragraph numbering of Plaintiff's Complaint is faulty in several sections, particularly from Pages 24-25.

R.I. Gen Laws. §19-14-23(f) (emphasis added).

The Rhode Island Legislature has directed that the provisions of this particular statute—and all licensing requirements for that matter—are solely investigated and enforced by the Director of the Department of Business Regulation ("DBR") and prosecuted by the Rhode Island Attorney General. Here, Plaintiff claims that Selene violated the prohibited acts and practices of § 19-14.11-4 in pursuit of foreclosure. (Am. Compl., ¶¶ 288-294) Notwithstanding the fact that all other arguments and grounds laid out in this memorandum demonstrate that absence of any grounds to claim a violation of this statute, Plaintiff has no authority and cannot point to any authority to seek to enforce this statute against the Defendants.

The General Assembly specifically appointed the DBR with sole authority to enforce the provisions of 19-14.11-4; no such authority or permission was granted to individuals in private litigation. Without an express authorization of the DBR to enforce the statute in question, Plaintiff cannot maintain a private right of action. Unless a statute specifically provides for a private right of action or private enforcement, the Rhode Island Supreme Court consistently refuses to infer such a right. *See Stebbins v. Wells*, 818 A.2d 711, 716 (R.I. 2003) ("When a statute 'does not plainly provide for a private cause of action [for damages], such a right cannot be inferred.'" (quoting *Bandoni v. State*, 715 A.2d 580, 584 (R.I. 1998))); *see also Callaghan v. Darlington Fabrics Corp.*, No. PC-2014-5680, 2017 R.I. Super. LEXIS 88, at *6-8 (R.I. Super. May 23, 2017) (Licht, J.) (collecting and citing numerous cases refusing to imply private right of action into statute). Moreover, "the function of prescribing remedies for [statutory] rights is a legislative responsibility [and] not a judicial task." *Cummings v. Shorey*, 761 A.2d 680, 685 (R.I. 2000).

For example, the Rhode Island Federal Court previously held that there is no private right of action for violations of § 19-14.9-12. *See Laccinole v. Twin Oaks Software Dev., Inc.*, C.A. No. 13-cv-716-ML, 2014 U.S. Dist. LEXIS 73879, at *21-23 (D.R.I. May 30, 2014), *aff'd*, No. 14–1705, slip. op. at 1 (1st Cir. Apr. 27, 2015). In *Laccinole*, the plaintiff alleged a host of consumer protection violations against the defendant (the dues processing firm used by his fitness club), including, *inter alia*, claims that the entity was not properly registered as a "debt collector" under the Rhode Island Fair Debt Collection Practices Act ("RI-FDCPA"). *Id.* at *1. In reviewing the statutory framework of the RI-FDCPA, the Court aptly noted that a debt collector's failure to register as such with the DBR does not give rise to a private right of action; instead, the Court noted the statute provides only for fines and/or imprisonment. *Id.* at *22.

Because § 19-14.11-4 does not expressly provide for a private right of action, and because § 19-14-23 clarifies that penalties for violations of any regulation promulgated pursuant to any provision of Title 19 will be assessed and enforced by the Director of the DBR, Plaintiff cannot maintain Count III of the Amended Complaint (¶¶ 288-294), and this Court must dismiss the cause of action with prejudice.

### D.   Plaintiff Has Not Alleged Sufficient Injury to Maintain a Claim Under the FDCPA (Counts IV and V) and RESPA (Counts VI and VII) Against Defendants

Plaintiff has failed to allege a particularized injury-in-fact or any concrete harm necessary to pursue a claim for RESPA and FDCPA violations. Similar to Plaintiff's failures with respect to his claimed violations of TILA (discussed below), Plaintiff cannot demonstrate that his RESPA claim is tangibly linked to any actual damages. *See, e.g., Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587-91 (7th Cir. 2016) (finding plaintiff in asserting RESPA violation must allege sufficient injury-in-fact, "not just a procedural violation divorced from any

20

harm."). Based on the absence of any allegations to assert standing under *Twombly/Iqbal* and in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016), this claim must be dismissed.

In *Diedrich*, 839 F.3d at 589-91, following a discussion of the injury-in-fact requirements to establish Article III standing post-*Spokeo*, the Seventh Circuit explained that while a plaintiff may allege a statutory violation of RESPA, the plaintiff will not escape dismissal unless there are actual, concrete injuries stemming from those violations alleged in the complaint. In reaching this conclusion, the Seventh Circuit compared the case with a New York federal court decision, *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285-PKC-AKT, 2016 U.S. Dist. LEXIS 101201 (E.D.N.Y. Aug. 2, 2016). In *Dolan*, the court rejected a plaintiff's attempt to hold a loan servicer liable for failing to provide him with so-called "hello" and "goodbye" letters, "as the plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability." *Dolan*, 2016 U.S. Dist. LEXIS 101201, at *17-*24.

Reading *Diedrich* and *Dolan* together, and following *Spokeo*, a plaintiff must allege an actual injury that results from a violation to be entitled to relief under RESPA. For example, in *Diedrich*, 839 F.3d at 591, the court ultimately determined that plaintiffs met that burden, because they alleged damage to their credit rating and increased payments to the loan servicer at a higher interest rate that resulted from the violations. Here, Plaintiff does not allege any damages to demonstrate an actual injury. For damages resulting from the RESPA and FDCPA claims, Plaintiff alleges attorneys' fees, gasoline charges to visit with his attorney, electricity expenses to recharge his cell phone to speak with his attorney, and postage and copying expenses in sending Regulation X qualified written requests. In effect, Plaintiff enumerates the costs and fees of pursuing the RESPA claim, which are not actual damages sufficient to establish standing to sue. Plaintiff also claims damages in that his mortgage loan was charged improper fees as a

1012775\304465524.v1

result of a void foreclosure. These costs and fees are not actual damages that result from the Plaintiff's pre-suit RESPA demand and the Defendants' alleged failure to comply with the demand letters. Instead, these costs and fees are the subject matter of the Plaintiff's pre-suit RESPA demand. Moreover, Plaintiff also alleges "emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home and a potential loss of his home, through an invalid foreclosure sale." (*See, e.g.,* Am. Compl. ¶319(e).) There are no fact allegations to support the request for relief, there is no basis for the Court to distinguish the claim from the otherwise expected mental issues associated with default and foreclosure.

Based upon the lack of any alleged damages that would establish a concrete and particularized injury-in-fact, the Court must dismiss Plaintiff's RESPA and FDCPA claims.

**E.**   **Defendants' Alleged Failure to Send Periodic Statements does not Establish Standing to Sue or Violate TILA**

Plaintiff's TILA claim arises from allegations that Selene failed to send monthly mortgage statements since June 25, 2017, yet Plaintiff ignores the acceleration and foreclosure of the loan and provides no actual, imminent, concrete and particularized resulting injury. The Truth in Lending Act includes provisions for issuing periodic statements for residential mortgage loans:

> **(1)** In general. The creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement setting forth each of the following items, to the extent applicable, in a conspicuous and prominent manner:
>
> **(A)** The amount of the principal obligation under the mortgage.
>
> **(B)** The current interest rate in effect for the loan.
>
> **(C)** The date on which the interest rate may next reset or adjust.
>
> **(D)** The amount of any prepayment fee to be charged, if any.
>
> **(E)** A description of any late payment fees.

22

(F) A telephone number and electronic mail address that may be used by the obligor to obtain information regarding the mortgage.

(G) The names, addresses, telephone numbers, and Internet addresses of counseling agencies or programs reasonably available to the consumer that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a State housing finance authority (as defined in section 1301 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 [12 USCS § 1441a-1]).

(H) Such other information as the Bureau may prescribe in regulations.

15 USCS § 1638. In short, this statute requires transmission of a mortgage loan statement during each billing cycle. *Id.* In *Osburn v. Ocwen Loan Servicing, LLC*, a California federal court dismissed borrowers' TILA claim because the borrowers relied on allegations that Ocwen did not send them periodic monthly statements following their default on the mortgage loan. C.A. No. 1:18-cv-00310, 2018 U.S. Dist. LEXIS 105038, at *31-32 (E.D. Cal. June 22, 2018). While the decision issues from another federal circuit, the court's analysis of a mortgagee's obligation to issue of periodic statements under TILA is pertinent here.

According to the *Osburn* decision, TILA did not require Ocwen to send periodic statements to the borrowers following notice of default. 2018 U.S. Dist. LEXIS 105038 at *31-*32. The court reasoned that "[t]he notice of default informed Plaintiffs that they were required to pay $18,931.43 by April 4, 2017 to avoid foreclosure." *Id.* at *31. The court further pointed out that the borrowers had *not* alleged no contact prior to their mortgagee issuing the notice of default, that once the borrowers were in default the mortgage company was no longer accepting monthly payments, and that the borrowers, following default, were required to bring the loan current to avoid foreclosure. *Id.* at *32. Here, Plaintiff's TILA claim relies upon allegations that he did not receive an accurate periodic monthly statement since the June 25, 2017 statement and that no statements sent to him since June of 2017 complied with TILA or Regulation Z, 12 C.F.R. 1026.41. The allegations demonstrate that Korde, on behalf of the Defendants, gave

23

notice of default on April 14, 2017, provided an amount to cure through that notice, and informed Plaintiff that he must cure the default by May 14, 2017 to avoid foreclosure. The allegations of the complaint further demonstrate that Plaintiff did not cure the default by the May 14 deadline, that the Defendants initiated a power of sale foreclosure with notice provided to Plaintiff by letter dated May 26, 2017, and that the foreclosure was completed July 20, 2017 with U.S. Bank, as Trustee the high bidder at $128,000.

Similar to *Osburn*, Plaintiff has demanded monthly mortgage statements only after he defaulted and failed to cure. Having issued a notice of default and right to cure, Plaintiff's mortgagee was not obligated to and would not accept a regular payment for any billing cycle. Instead, the notice of default provided the necessary action to cure. (Notice of Default, *Exhibit C* to Complaint, ECF No. 1-3 at p. 59; Mortgage, *Exhibit A* to Complaint, ECF No. 1-3 at 46-47.) Following notice of default, Plaintiff was required to cure the default to reinstate the loan, and in fact this requirement continued by and under the terms of the mortgage until foreclosure. The allegations of Plaintiff's complaint, and documents appended to the complaint, demonstrate that Defendants were not accepting, nor where they required to accept, periodic payments on a monthly billing cycle once notice of default issued. The allegations further demonstrate that Defendants provided Plaintiff the amount owed on the mortgage to avoid default, acceleration and foreclosure. Plaintiff's demand for a periodic mortgage loan statement mistakenly assumes that a monthly billing cycle continued following the default, following his failure to reinstate and following the foreclosure. Plaintiff's complaint fails to state a TILA violation.

Even if this Court were to assume a TILA violation for missing periodic mortgage loan statements following default and foreclosure, Plaintiff cannot demonstrate any actual injury or harm. In *Pemental v. Bank of N.Y. Mellon*, No. 16-483S, 2017 U.S. Dist. LEXIS 122971 (D.R.I.

1012775\304465524.v1

May 10, 2017), this Court dismissed a similarly pleaded TILA claim for failure to send periodic mortgage loan statements, because the plaintiff failed to allege facts sufficient to demonstrate an injury in fact. Pementel's TILA claim relied upon statutory damages, attorneys' fees, costs and expenses he incurred in asserting the claim. *Id.* at \*17-18. Relying upon the U.S. Supreme Court's decision in *Spokeo,* 136 S.Ct. at 1549-50, the court dismissed for lack of injury:

> Plaintiff's only injury is the attorneys' fees, costs and expenses he incurred in asserting his TILA claim. While these would be recoverable if there has been a TILA violation... they are not a substitute for the injury-in-fact required by *Spokeo*. If they were, they would subsume the injury-in-fact requirement since, apart from *pro se* claims, every TILA complaint requires the expenditure of attorneys' fees. With no plausible injury-in-fact other than the attorneys' fees and costs in prosecuting the TILA claim alleged as his only actual injury, it is clear that Plaintiff's TILA claims are barred by *Spokeo*.

*Id.* at \*18-19. In applying *Spokeo* to TILA claims, when a complaint alleges only a mere technical violation of TILA orphaned from a concrete or particularized injury, that complaint must be dismissed. *Id.* (citing *Davidson v. PNC Bank, N.A.*, No. 1:16-cv-569-WTL-MPB, 2016 U.S. Dist. LEXIS 170523, at \*1 n.1 (S.D. Ind. Dec. 9, 2016)).

Here, Plaintiff concedes (or at least does not contest) that Defendants did, in fact, send periodic monthly statements up until June 25, 2017, so any TILA violation would require damages incurred since June 25, 2017. Similar to *Pementel*, Plaintiff alleges damages that arise exclusively from the costs and expenses he incurred in asserting his TILA claim:

    a.    He has incurred costs for gasoline to visit their attorney on at least five occasions, driving to his attorney's office for a round trip totaling 8.6 miles. The IRS standard mileage allowance provides for.56 per mile.

    b.    He has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant.

    c.    He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney.

1012775\304465524.v1

     d.     He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with their attorney provides that they will be responsible for legal fees expenses incurred in regard to this action.

Without question, Plaintiff's sole injury alleged here consists of the attorneys' fees, costs and expenses he has incurred in pursuit of the TILA claim. With no plausible injury in fact other than attorneys' fees and costs in prosecuting the claim, *Spokeo* bars the Plaintiff's TILA claim, and the Court must dismissed Count IV.

## V. CONCLUSION

For the reasons stated above, Selene Finance LP and U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee for BCAT 2016-18TT, respectfully request the Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

> SELENE FINANCE LP; AND U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE FOR BCAT 2016-18TT,
>
> By Their Attorneys,
>
> */s/ Samuel C. Bodurtha*
> Samuel C. Bodurtha, Bar No. 7075
> HINSHAW & CULBERTSON LLP
> 56 Exchange Terrace, 5th Floor
> Providence, RI 02903
> Telephone: (401) 751-0842
> Facsimile: (401) 751-0072
> sbodurtha@hinshawlaw.com

Dated:    October 10, 2019

1012775\304465524.v1

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on October 10, 2019.

/s/ Samuel C. Bodurtha
Samuel C. Bodurtha